## Murphy *v.* Pennsylvania R. R. Co., Appellant.

*Negligence—Damages—Medical experts—Opinions—New trial —Excessive verdict.*

1. In a personal injury case, on a motion for a new trial based on an excessive verdict, but little weight should be given to the testimony of professional medical experts who make it their business to testify in such cases.

*Practice, C. P.—New trial—Excessive verdict—Reducing verdict —Court in banc—After-discovered evidence—Appeals.*

2. The remedy for an excessive verdict is by application to the trial court, where the plaintiff can be given an opportunity to either accept a reduction or a new trial.

3. The obligation to control such verdict is not limited to the trial judge, but extends to the court in banc, whose duty it is, not only to hear, but subsequently to meet together, and discuss the matters presented before them.

4. In such case where a majority of the court feel convinced an exaggerated verdict has been rendered, the amount should be reduced by proper order, or a new trial awarded even though the trial judge disagrees.

5. A verdict of $35,000 will be set aside where the appellate court finds from the evidence that such an amount was grossly excessive, and especially where it appears the amount if placed at interest would give plaintiff more than double any yearly earnings made prior to the accident and would leave the principle untouched.

6. A new trial should be awarded where after-discovered evidence indicates that plaintiff had suffered a prior injury which might have continued until the time of the accident, and had been largely responsible for the condition existing at the time of the trial as to which an expert testified.

Argued September 28, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 133, March T., 1927, by defendant, from judgment of C. P. Allegheny Co., July T., 1925, No. 2570, on verdict for plaintiff, in case of Rose Murphy v. Pennsylvania Railroad Co. Reversed.

Trespass for personal injuries. Before GOLLMAR, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $35,000. Motion for new trial refused by REID, McVICAR and GOLLMAR, JJ. Defendant appealed.

*Error assigned* was refusal of new trial, quoting record.

*Robert D. Dalzell*, of *Dalzell, Fisher & Dalzell*, for appellant, cited: Gail v. Phila., 273 Pa. 275.

*Rody P. Marshall,* with him *Meredith R. Marshall,* for appellee, cited: Wensel v. Standard S. & E. Co., 72 Pa. Superior Ct. 56; Duaine v. Refining Co., 285 Pa. 81; Hertzberg v. Cab Co., 243 Pa. 540; Quigley v. R. R., 210 Pa. 162; Potts v. Guthrie, 282 Pa. 200.

OPINION BY MR. JUSTICE KEPHART, December 5, 1927:

Appellee, a passenger, was injured in a collision between two of appellant's trains. No defense was offered and the only contest was the amount of compensation to be paid. The verdict was for $35,000, but a most casual review of the record will show that it cannot be supported.

When the collision occurred, on August 28, 1924, appellee was standing in the train. The shock caused her to fall, her head striking an obstruction, causing unconsciousness. When she was taken to the hospital, Dr. Hays, the physician in charge, made an examination. The patient showed symptoms of concussion of the brain and spine, a few contusions over the back of the head, and tenderness of the back of the neck. She complained of headache, vertigo, and numbness of the fingers. He put her to bed, made a thorough examination, taking x-ray pictures. No fractured or broken bones were discovered, nor did he find any injury of a permanent nature. A cotton collar was placed around the neck to keep it steady, and medication for soothing the nerves was given to make the patient comfortable. The treatment was administered for some ten days and then the patient was sent home. Dr. Hays next saw her about two months later, at which time there was complaint of dizziness and vertigo, but she was in a much better condition than when she left the hospital. She could easily walk around and her general condition was fair, though she was thinner than when she entered the hospital. While at the home of her mother and sister in Greensburg, Dr. Wilson, to whom the girl reported, took charge of the case. He kept no records, and his testimony was

not enlightening, except as it reflected appellee's general appearance.

Appellee's claim, from a medical viewpoint, was in the main supported by the testimony of an expert called in a few months before the suit was entered, June 18, 1925. The doctor was a general practitioner and not a specialist in any medical or surgical treatment. His history of the case did not vary from that described by the attending physician and the appellee herself. The physical examination revealed some difference in the reflexes, that is, the reaction of the left leg, on being struck on the tendon, was more marked than that of the right; and the test as to ability to stand upright with the eyes closed and the feet close together, practically in contact, was marked with unsteadiness. Appellee was emotional and would cry easily. She weighed 124 pounds as against 142 pounds two years before. She did not seem to handle her mental faculties well, and, after she had been under his care for a while, he noticed a puss condition in one of the ears, but there was no evidence to connect this illness with the injury. There were no fractures of the spine, but the doctor found considerable trouble with the ligaments. He advised rubbing the neck with a sedative, gave a tonic, and advised complete rest. This is a brief summary of his evidence in regard to physical condition, given with a wealth of detail, adjectives and technical terms, to impress the jury.

The professional expert, whose testimony we relate above, frequently appeard in court as a witness in personal injury cases, and the inference from his evidence is that he made the giving of testimony in such actions a business. One of the evils in the trial of personal injury cases is padding the claim with evidence of the professional medical expert. When considering a motion for a new trial, based on an excessive verdict, ordinarily but little weight should be given to such testimony.

Appellee lived in Greensburg, and, at the age of twenty-one, started to work as a bookkeeper at a wage of $20 a week. This employment continued for "two weeks" or "two months"; the duration was not fixed. Appellee next entered a musical school for voice training. There she remained two or three years, until near the time of the accident. She commenced singing in a church choir when quite young, and would frequently sing at funerals or other places; it does not appear what, if any, compensation was received for this work. She had not been graduated from the musical school, but expected to sing professionally thereafter. She also worked for two months in Chicago after the accident as a cashier in a restaurant, receiving $25 a week, but states that she was physically unable to continue it, and since then has not tried to work, nor has she been able to sing. This was the evidence submitted to show earning power prior to and since the time of the accident.

We repeat what we said in Gail v. Philadelphia, 273 Pa. 275, 278: "In the proper administration of the law, the remedy for excessive verdict is by application to the trial court, where the plaintiff can be given an opportunity to either accept a reduction or a new trial. This power of supervision is not merely a privilege conferred, but an imperative duty imposed upon it. What was said in Holden v. P. R. R. Co., 169 Pa. 1, 17, may well be repeated here: 'Where juries are so palpably regardless of their duty, and the sanctity of their oaths, that they permit their verdicts to be rendered in obedience to their prejudices or their sympathies, the trial court should deal with them in a firm and decisive manner and should reject their erroneous verdicts without the least hesitation or delay. Otherwise, the administration of justice is brought into public contempt and dishonor.' The obligation to control is not limited to the trial judge, but extends to the court in banc, where the motion for a new trial is argued. It is the duty of all the judges so sitting, not only to hear, but subsequently

to meet together, discuss and determine the matters presented before them (Smith v. Times Pub. Co., 178 Pa. p. 502), and, where a majority feel convinced an exaggerated verdict has been rendered, the amount should be reduced by proper order (Ralston v. Phila. R. T. Co. (No. 2), 267 Pa. 278), or a new hearing awarded even though the trial judge disagrees; otherwise, arguments before a court in banc are useless." The amount of the verdict, $35,000, placed at interest would give this appellee more than double any yearly earnings made prior to the accident, and would leave the principle untouched.

There is an added reason which the trial court should have seized to grant a new trial. Plaintiff stressed results supposed to come from the injury to her head. After the trial it was discovered, on investigating the records of Westmoreland County, that she had, prior to the present action, entered prosecutions for assault and battery against two persons, the occasion being a dispute over the rent of a house. In one, she charged the defendant with "beating" her head against a post, causing unconsciousness for three hours, and in the other, striking her with force and violence on the head. The court below in the present case, admitting the verdict was in excess of her earning power, refused to consider these affidavits as being of any weight, or to order a reduction of the amount of the verdict, or, as an alternative, a new trial. This was manifest error. If the effect of the present blow on the head continued as long as appellee suggests, then there is no reason why this prior injury might not have continued and so be largely responsible for the present condition of which the expert testifies. Had this evidence been submitted when the case was on trial, undoubtedly the jury would have given it serious consideration.

The judgment of the court below is reversed and a venire facias de novo awarded.