## Mucichuck *v.* John A. Eichleay, Jr., Company, Appellant, et al.

348

Argued April 12, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Harold E. McCamey,* of *Dickie, Robinson & McCamey,* with him *William W. Matson,* for appellant.

*J. Thomas Hoffman,* for appellee.

Opinion by Parker, J., July 15, 1938:

In this workmen's compensation case, Mike Muci-chuck, on June 16, 1931, met with an accident which resulted in a broken leg. He died on October 2, 1933, and it is conceded that the immediate cause of his death was tuberculosis of the liver and kidneys. Compensation was paid to him under an open agreement for total disability for about a year when the defendant petitioned for termination. That petition had not been

finally disposed of when he died, and after his death his widow made claim for the compensation payable to a widow. The two cases were consolidated and the widow now has a judgment for compensation for total disability for 61 2/7 weeks for the period prior to death and compensation for death for 238 5/7 weeks. The legal question raised on this appeal is the sufficiency of the evidence to support the award and subsequent judgment and, particularly, in respect to the claim for death, whether the testimony of a certain physician testifying as an expert was sufficient to establish a causal connection between the accident and subsequent death.

Mucichuck, while in the course of his employment in June, 1931, suffered an oblique fracture of the right tibia a short distance above the ankle. Compensation for total disability was paid to him under a written agreement until July 29, 1932. On August 9, 1932, defendant filed a petition to terminate the agreement and a referee made an order so terminating it as of July 29, 1932. On appeal to the board the case was sent back to a referee for the purpose of taking the testimony of an impartial physician, but the claimant died before such additional testimony was taken. On October 20, 1933, the widow filed a petition for compensation for the death of her husband. A referee disallowed the claim and the board, having consolidated the petition to terminate and the widow's petition, again sent the case back for a rehearing. The referee a second time disallowed the claim and thereupon the board reversed the referee and substituted these findings: "From a preponderance of all the evidence the board finds as a fact that prior to the injury the claimant was a strong and healthy man and was accustomed to hard labor; that subsequent to the accident he was unable to do any work; and that the injury sustained on June 16, 1931, was one of the participating factors of his death.

That since the preponderance of evidence shows that the accident of June 16, 1931 is one of the participating factors of decedent's death, the claimant is entitled to recover compensation under the Compensation Act of 1915, as amended."

On appeal to a court of common pleas the award was affirmed and judgment entered for the claimant for 61 2/7 weeks from July 30, 1932, to October 2, 1933, the date of death, for total disability due decedent at the time of his death (Amendment April 13, 1927, P. L. 186, §5; 77 PS §751), and for 238 5/7 weeks, or the balance of the 300 weeks, to which the widow was entitled under the compensation act. There was here a clear mistake for the defendant was not given credit for the compensation which was paid to the husband in his lifetime for the period from June 23, 1931, to July 29, 1932 (Act, June 2, 1915, P. L. 736, §306 [f], as finally amended April 13, 1927, P. L. 186; 77 PS §541). This error is conceded by the appellee. It is to be noted that the board by its final award not only considered the claim for death but disposed of the petition to terminate.

That the employee was totally disabled for a period of approximately one year and that compensation for total disability was paid to July 29, 1932, is conceded.

We will first consider the claim for compensation due decedent at time of his death. Testimony on the petition to terminate was taken on January 10, 1933. Dr. Berkowitz, who attended Mucichuck from August 10, 1931, to March 9, 1932, called by defendant, testified that the employee was able to return to his former work on July 29, 1932, and, in effect, that he had entirely recovered. Dr. Ishlon, who was called by the claimant, attended the employee after August 15, 1931, and testified that the employee was not able to return to his former employment even at the time of the hearing, but that he was able to do light work. John Kowolski, who

was called by claimant, testified that he was with claimant in June, 1932, when he applied to defendant for work but that defendant did not have any work for him. The only other witness called at that hearing was the claimant who stated that his leg hurt him, but that he had applied to defendant for employment as was testified to by Kowolski.

It is most apparent that this testimony would not support an award for total disability for the period from July 29, 1932, to October 2, 1933, the date of death. In fact, the referee thought it would not support any claim and, filed an order terminating the agreement. The board on appeal evidently concluded that the testimony then in the record would not support an award for total disability as it sent the case back for the purpose of taking the testimony of an impartial physician. This evidence, however, owing to the intervening death of the claimant, was not taken. However, we cannot say that the testimony would not support a claim for partial disability. As we shall see, the testimony offered in support of the widow's claim adds nothing in this respect. It is therefore necessary to return the case to the board that it may determine what, if any, sum claimant is entitled to receive for partial disability for the period prior to decedent's death.

That leaves for consideration the testimony bearing on the claim for death. An award of a compensation board must be sustained if there is any competent evidence or any inference of fact fairly deducible therefrom supporting the award, though the reviewing court might have arrived at a different conclusion if it had been the fact finding body: *Ford v. Dick Co.*, 288 Pa. 140, 135 A. 903. The compensation authorities are to decide all questions of fact and the courts are to decide those of law; "mixed questions of fact and law......may be reviewed by the courts on the latter aspect alone": *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199,

207, 133 A. 256. With these principles in mind we will state the facts established by the claimant's evidence. Prior to the accident Mucichuck, then about fifty years of age, had been in normal health and able to perform hard labor. In June, 1931, he suffered an oblique fracture of the tibia. The bone was set and there was a satisfactory union of the bones. At the end of a year he was able to perform light labor although he suffered some discomfort. In March, 1933, he had a severe attack of grippe which lasted four weeks. Tuberculosis then developed and he died October 2, 1933, the cause of his death being described as tuberculosis of the liver and kidney complications. The injured man was attended by five different physicians and surgeons. The defendant called three of these who either stated positively that there was no causal connection between the accident and death or were unable to express an opinion on the subject. Under the rule stated these opinions must be eliminated insofar as they negative the claim and we are required to examine the testimony of the two physicians called by the claimant to ascertain whether their evidence will support the judgment.

The claimant's witness, Dr. Ishlon, attended him from August 15, 1931, to March 28, 1933, and although he was pressed for an answer to a hypothetical question as to whether there was any causal connection between the accident and death, he declined to state that in his professional opinion there was such connection. The extent of his conclusion was that injuries of the type suffered by decedent "may cause conditions of this sort." His opinion was summed up in the following question and answer: "Q. There is a possibility, whether or not it is a fact you can't tell us? A. No." It is clear that this testimony does not measure up to the requirement that the expert shall state that "in his professional opinion, the result in question came from the cause alleged, though, as stated in *Johnston v.*

*Payne-Yost Con. Co.,* 292 Pa. 509, such testimony need not be given in any particular words": *Rushonosky v. Lehigh Valley Coal Co.,* 293 Pa. 150, 152, 141 A. 851. "A declaration that the death may have resulted from the cause claimed is too indefinite to justify an award": *Jones v. United Iron & Metal Co.,* 99 Pa. Superior Ct. 394, 401.

The claim therefore rests solely upon the testimony of Dr. Paul H. Franklin. That physician saw and examined Mucichuck at his office on July 7, 1933. He made subsequent visits at the patient's home but was unable to state the number or dates of such visits as he could not find a record of them and he was not in the city when Mucichuck died. He testified as to the facts and symptoms developed from his personal examination and stated that he received a history that included the accident, the injury, treatment in the hospital, that the employee's health had been good prior to the accident, that his normal weight of 163 pounds was then reduced to 135 pounds and that the immediate cause of death was tuberculosis of the liver and kidney complications. The expert opinion of the witness was contained in the following questions and answers: "Q. Doctor, the report of death to the Bureau of Vital Statistics, contained the information that he died on October 2, 1933 with tuberculosis of the liver and kidney complications. I will ask you whether you arrived at any opinion following his death, as to whether the injury he sustained on June 16, 1931 had any causal connection with his death? A. I will say, in my opinion, from the history which I received of this man's previous health and ability to work, that the painful injury which he had to his right leg, which tended to change his habits, interfered with his rest, disturbed his nervous system, consequently his cardial vascular condition, followed by loss of weight and susceptibility to infection, would in my opinion have direct bearing

on what happened later in the matter of things that contributed and caused his death. Q. Have you (strike that). And in your opinion, doctor, did these things bring on or hasten his death? A. In my opinion, they set up the mechanism of things that subsequently caused his death."

The statement of the history of the patient as given by the expert and of the facts observed by him ignored an important item disclosed by the claimant's own witness, Dr. Ishlon. That witness testified: "Yes, when I saw him in March, 1933, he had a severe grippe of a month's duration. He lost a great deal of weight and he was of very low resistance, and as far as I know, he never made a complete recovery of it."

It is apparent that the mere sequence of events, under the circumstances, was not sufficient to establish a material connection between the broken leg and the death from tuberculosis of the liver and kidneys twenty-eight months later where there had been a union of the bones and the injured person had recovered the functional use of his leg. In fact, four of the five physicians who attended him could not find any such connection. It is likewise apparent that the expert, Dr. Franklin, supplied no competent expert advice which warranted the finding of fact made by the board. In the first place, the expert opinion, if it amounted to such, was valueless for it was not predicated on and did not give consideration to an important fact. It was shown by the claimant herself that during March, 1933, the decedent had a severe attack of influenza from which he never recovered and that in the following months tuberculosis of the liver and kidneys developed and was the immediate cause of death. Even a layman has some knowledge as to the nature of influenza and tuberculosis and yet those conditions were completely ignored by this so-called expert. Such an important matter when it is a fact admitted on all sides must be taken

into account by an expert when giving such an opinion as was here expressed. The Supreme Court in the case of *McMinis v. Phila. Rapid Tr. Co.*, 288 Pa. 377, 382, 135 A. 722, speaking of such expert testimony, said: "He is not competent, however, to give an opinion based only on a part of the material evidence adduced, as attempted here, though he may be asked as to his conclusion from consideration of specifically defined portions of the testimony offered."

When we examine the reply that was given by the expert we are still without competent advice. The reply was neither definite nor enlightening and was capable of a variety of interpretations. He stated that the accident had a bearing on what occurred later without stating what that bearing was or how or to what extent the accident contributed to the death. We refer to his statement to the effect that the painful injury and loss of weight had a direct bearing on what happened later "in the matter of things that contributed and caused his death." This is not much more than a jargon of words. Neither do we find any assistance in his reply that the things he had mentioned "set up the mechanism of things that subsequently caused his death."

We have not, in compensation cases, rigorously enforced all the technical rules of evidence and particularly those as to the content of hypothetical questions, but we have here a situation where we are dealing with facts and witnesses that are different from those presented in the usual case. Counsel for the appellants in their brief call our attention to the fact that this same witness, in giving testimony in other cases, has been the subject of comment by the Supreme Court. See *Murphy v. Penna. R. R. Co.*, 292 Pa. 213, 140 A. 867; *Tauber v. Wilkinsburg*, 309 Pa. 331, 335, 163 A. 675; *Nickolls v. Personal Finance Co.*, 322 Pa. 67, 69, 185 A. 286. While the credibility of witnesses is for the

fact finding body and we cannot, as in common law actions, grant a new trial, we will at least in such situations as we have here scan the testimony with the greatest care. Our conclusion is that the alleged expert threw no light on the subject and that the record is entirely devoid of evidence supporting the finding that there was a causal connection between the accident and the death of Mucichuck. The portion of the judgment awarding compensation to the widow for the death of her husband cannot be sustained.

The judgment of the court below is reversed and the record is remitted to the court below for the purpose of returning the record to the Workmen's Compensation Board to reconsider the question as to what, if any, amount the claimant is entitled to receive on account of partial disability of her husband prior to his death and, if necessary, to receive further evidence bearing on that subject.