# Ford, Appellant, *v.* A. E. Dick Co.

*Workmen's compensation — Review of findings by court — Evidence—Presumption—Suicide—Burden of proof—Declarations of decedent—Mental condition.*

1. There is a presumption against suicide or self-destruction on the part of a sane person, who came to his death under circumstances not explained.

2. Such presumption is recognized by the Workmen's Compensation Act of June 2, 1915, P. L. 736, inasmuch as it provides "that no compensation shall be made when the injury or death be intentionally self-inflicted, but the burden of proof of such act shall be upon the employer."

3. Where a presumption in favor of a party entitles him to have his case submitted to the triers of the facts, it cannot be withdrawn from them merely because other evidence tends to rebut the presumption, even though such evidence may be very strong.

4. Whether the presumption is rebutted is for the triers of the facts unless the evidence to the contrary is clear, positive, credible and either uncontradicted or so indisputable in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law.

5. The presumption which carries the plaintiff's case to the triers of fact, though rebuttable, has the same probative force as direct evidence.

6. In workmen's compensation cases, the compensation authorities are to decide all questions of fact and the courts those of law, and mixed questions of fact and law may be reviewed by the courts on their latter aspect only.

7. In a workmen's compensation case, where suicide of the employee is set up as a defense, and there is in evidence declarations of the decedent tending to show that he committed suicide, and also declarations by him to the contrary effect, both being received without objection, it cannot be argued with reason that the declarations which tend to show suicide are admissible as declarations against interest, and should be considered, while the declarations to the contrary effect must be ignored.

8. Where all the declarations have been received in evidence without objection, the court will assume that both plaintiff and defendant had elected so to try the case, inasmuch as, under the circumstances, even evidence ordinarily incompetent may be considered, in this class of cases, although material findings cannot rest on such evidence.

9. Where the compensation authorities have refused to find that the deceased committed suicide, and their findings have been reversed by the common pleas, the appellate court must look at the evidence in the light most favorable to the claimant, inasmuch as she has obtained the equivalent of a verdict on the facts.

10. If some of the declarations, admitted by consent, tended to show that the wound of the deceased was not intentionally inflicted, such declarations could not be ignored by the compensation authorities, but were proper to be considered with the declarations relied on by defendant and other items of proof, in determining whether defendant had overcome the presumption against self-injury and proved suicide.

11. Where the dead body of an employee is found on the premises of his employer at or near his regular place of service, under circumstances fairly indicating an accidental death, which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment.

12. Where it cannot be said as matters of law that the award of the compensation authorities in claimant's favor entirely lacked evidential support and that the evidence relied upon by defendant was so clear, positive, credible or uncontradicted or so indisputable in weight as to justify the court in holding that the employer had sustained the burden put upon him, of showing suicide, the judgment of the court of common pleas in setting aside the award on the ground that this burden had been sustained will be reversed on appeal.

13. The court of common pleas has no right to weigh the evidence and change the findings of fact made by the compensation authorities.

14. Where the deceased has made conflicting declarations as to the cause of the wound which resulted in his death, some consistent with suicide and others not, his mental condition, when he made the various declarations, is for the consideration of the compensation authorities.

Mr. Justice Schaffer dissented.

Argued November 29, 1926.    Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 227, Jan. T., 1926, by plaintiff, from judgment of C. P. Schuylkill Co., July T., 1924, No. 310, reversing decision of Workmen's Compensation Board,

in case of Catherine Ford v. A. E. Dick Company. Reversed.

Appeal from decision of Workmen's Compensation Board. Before KOCH, J.

The opinion of the Supreme Court states the facts.
Decision reversed. Claimant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*Roger J. Dever,* for appellant.—The question as to whether or not the injury James Ford received was intentionally self-inflicted was one of fact for the Workmen's Compensation Board, and, they having passed upon that fact, their decision was final on the court below: Clark v. Coal Co., 264 Pa. 529; Kuca v. Coal Co., 268 Pa. 163; Stahl v. Coal Co., 268 Pa. 452; Zelazny v. Coal Co., 275 Pa. 397; Laraio v. C. & I. Co., 277 Pa. 382.

Suicide is a question of intention and is to be proven by direct or circumstantial evidence and should be submitted to triers of facts as a question of fact: Shank v. Aid Soc., 84 Pa. 385; Continental Ins. Co. v. Delpeuch, 82 Pa. 225; Wenrich v. Heffner, 38 Pa. 207.

*H. S. Welty,* with him *Butz & Rupp,* for appellee.—Where there is a dispute, as in this case whether the record includes any evidence at all, competent in law, to sustain a particular finding of fact, the question is one of law and for the court: Vorbnoff v. Machine Co., 286 Pa. 199; Kuca v. Coal Co., 268 Pa. 163; McCauley v. Woolen Co., 261 Pa. 312; Wolford v. Moving & Storage Co., 262 Pa. 454.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1927:

Plaintiff, Catherine Ford, filed a claim against A. E. Dick Company to recover compensation on behalf of

herself and children for the death of her husband, James
Ford, who, she alleged, died as the result of an accident,
which occurred in the course of his employment with
defendant. The latter's answer was that Ford had com-
mitted suicide. The referee's award in favor of claimant
was approved by the board; on appeal, however, the
Common Pleas of Schuylkill County sent the case back
for further evidence. Again the referee found in favor
of claimant, and the board approved; but the court
below reversed and entered judgment in favor of defend-
ant. Plaintiff has appealed to us.

All the evidence which we are about to recite was re-
ceived without objection. Ford was a watchman for
defendant company, his work requiring him to inspect
and generally take care of the boilers at the company's
coal mines during the night. He was found at his regu-
lar place of service early in the morning of October 4,
1921, by Frank Steibler, defendant's engineer, with his
throat cut and traces of blood spread around the prem-
ises, indicating movements by the wounded man after his
injury. Steibler, who was the first person to come in con-
tact with Ford following the occurrence, at once asked
him, "What is the matter, are you sick?" and received the
reply, "No, I cut my throat." Steibler exclaimed,
"What?" Whereupon Ford again said, "I cut my
throat," immediately adding, "Go to hell." Steibler
then inquired, "How did you do it?" and the response
was, "With a pocket knife." When asked by Steibler
when this happened, Ford said, "Fifteen after eleven."

William Fox, foreman for defendant, was summoned
by Steibler and arrived at about six o'clock. Fox testi-
fied that one of Ford's sons, a boy, was there, who asked
his father, "Pop, what happened to you?" and he said,
"I got my throat cut." The boy inquired, "Who done
it?" and the reply was "Myself." Then the boy asked,
"Who told you to do it?" and his father responded,
"Neil Ferry." This witness said that he had met Ford
the night before and he seemed to be "perfectly sober,"

"all right." Fox said he had made a search of the premises to discover any knife or other implement with which Ford could have cut himself, but found none. When asked about the state of mind Ford was in when he made the declarations in the witness's presence, he said: "He spoke straight enough to me; he could speak all right." Fox, like the witness Steibler, testified to blood being scattered about in several places; and, in addition to the above-quoted declaration on the part of deceased, he testified that he himself had asked Ford what happened to him, and the latter replied, "I cut my throat." Then Fox asked, "What did you blow the whistle for?" and the injured man said, "For help."

Another witness who testified to declarations by Ford was Dr. Wetterau, who was the first physician to attend the injured man. This witness said that he inquired of his patient how it happened and the reply was that he had cut himself with a knife. When asked by the doctor, "Why did you do that, Jerry?" the witness testified that Ford "closed his lips and refused to answer anything further." This, the witness stated, was "all" that Ford had said; he also stated that Fox was present on the occasion and in a position to hear everything that was said. It will be observed that the declarations of Ford reported by Dr. Wetterau differ from those detailed by Fox, and that the latter, if he heard what deceased said to the doctor, made no reference to it in his testimony.

The testimony of the above three witnesses covers all the declarations made by deceased before his removal to the hospital. Several days after his injury, Ford's wife saw him at the hospital. At first he had nothing to say; but on her second visit, when asked, "How did this happen?" she stated that he just lifted his hand and said, "There they come," and when asked "How many?" replied, "Two." The witness testified that she thought her husband was sane at the time of these declarations;

she said that, though Ford drank at times, he had not been indulging for some days before his death.

Bernard Carlin, a nephew of Ford, testified that he called at the hospital, and when he inquired of the patient, "Who did it?" Ford replied, "I was tackled."

James Ford, a son of deceased, testified that he saw his father in the hospital and asked him, "Did you do it?" The reply was, "No." He then asked, "Who did it?" and the father said, "I don't know." This witness expressed the opinion that the injured man was conscious and sane when he uttered the declarations just recited.

Dr. Gaughan, who attended deceased at the hospital, said that he arrived in a serious condition, "with the wind-pipe wide open." This witness stated, the patient was "delirious most of the time."

Two other witnesses were produced at the second hearing, and no objection has been made to their testimony. The first of these, Neil Ferry, said that he had known deceased for years and was on the most friendly terms with him; that he had never, under any circumstances, told him to cut his throat.

Some point is made in the opinion of the court below about a statement in the testimony to the effect that there were two Neil Ferrys, and that the man who appeared might not have been the one meant by deceased; but it seems reasonably clear from all that was said on the subject of Neil Ferry that this was the one in question. There was nothing to show that the other Neil Ferry, if he existed, lived anywhere in the locality involved in this case, or who or what he was; whereas the testimony shows that the Neil Ferry who appeared was well known to all concerned, and everyone seemed to take it for granted at the hearing that this was the man in question.

The only remaining witness was a man named Thomas, who testified he had known Ford all his life; that he had met him going to work on the night before

the fatality and observed nothing unusual about him. Thomas said he had talked with deceased that evening and found him "jovial," "in a good humor."

Section 301 of the Workmen's Compensation Act of 1915, P. L. 736, provides "that no compensation shall be made when the injury or death be intentionally self-inflicted, but the burden of proof of such act shall be upon the employer." The compensation authorities believed and found that defendant had not borne this burden; while the court below believed and found to the contrary. Thus arises the point in the case.

There is a presumption against suicide or self-destruction on the part of a sane person, who came to his death under circumstances not explained (Continental Ins. Co. v. Delpeuch, 82 Pa. 225, 231, 235; Travellers' Ins. Co. v. McConkey, 127 U. S. 661, 667; Guardian Life Ins. Co. v. Hogan, 80 Ill. 35, 42; 22 C. J. 95; Chamberlayne, Modern Law of Evidence, section 1053), and this presumption is expressly recognized by the act before us when it casts on the employer the burden of proving the contrary state of affairs.

In Kelly v. Director General, 274 Pa. 470, 474, 475, we said: "Where a presumption in favor of a party entitles him to have his case submitted to [the triers of the facts] it cannot be withdrawn from them merely because ......other evidence [tends] to rebut that presumption [even though] the evidence to rebut the presumption may be very strong." There we called attention to the well-recognized fact that those who see and hear witnesses are best situated to judge the value of the evidence given by such witnesses, and said that, while "the force of the evidence may or may not be sufficient to convince them that the natural presumption arising from human instinct [has been] repelled, [yet,] before they can come to this conclusion, they must consider the circumstances under which the repelling witnesses testify." Finally, adding authorities, we said: "Whether the presumption is rebutted is for [the triers of the

facts] unless the evidence to the contrary is clear, positive, credible and either uncontradicted or so indisputable in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law." Here we have a guiding rule for the present case.

Other guiding rules are stated in Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 207, 209, as follows: "The compensation authorities are to decide all questions of fact and the courts are to decide those of law; ......mixed questions of fact and law......may be reviewed by the courts on their latter aspect alone." Again, as to findings of fact, the only question for the courts is, Does the record contain legally competent evidence to sustain them?

Defendant contends that the only legally competent evidence on this record, as to how Ford came to his death, is that showing declarations by the deceased which tend to prove he committed suicide; that these particular statements are admissible as declarations against interest, while none of the declarations tending to show that deceased's wound was not intentionally self-inflicted have any legally sufficient grounds to support their admission in evidence.

There are several answers to the contentions just stated. To begin with, the presumption which carried plaintiff's case to the triers of the facts, though rebuttable, had the same probative force as direct evidence: Holzheimer v. Lit Bros., 262 Pa. 150, 152, 153, and other authorities supra. Next, the testimony of the witness Steibler, who first saw Ford after the accident, is competent as part of the res gestæ (Smith v. Stoner, 243 Pa. 57, 63; Com. v. Puntario, 271 Pa. 501, 506), and his evidence does not show that deceased's wound was intentionally self-inflicted, it merely shows that he said, "I cut my throat," and told when it happened. Then, the physical facts attendant upon or accompanying the finding of deceased, as well as the evidence concerning

the duties performed by him, etc., were for the consideration of the triers of facts, and properly may have had weight with them in reaching their mixed conclusion of fact and law that defendant did not prove deceased's wound to have been intentionally self-inflicted. But, since all the declarations of deceased were received without objection, both those given in evidence by plaintiff and by defendant, we must assume that both plaintiff and defendant elected so to try the case, and we have said that, under such circumstances, even evidence ordinarily incompetent may be considered (Poluski v. Glen Alden Coal Co., 286 Pa. 473, 476); though we have also said material findings cannot rest on that kind of evidence alone: McCauley v. Imperial W. Co., 261 Pa. 321, 326.

Here, our review of the evidence shows several declarations by Ford which, though they fail plainly to say his wound was not intentional or self-inflicted, yet are consistent with the presumption to that effect, and in connection with these declarations it must be recognized that one often colloquially states, "I cut myself," when the cut is purely accidental. It is possible that certain of Ford's declarations that are now sought to be used against him ought to be understood in this innocent sense. As we are now reviewing the work of a trial tribunal,—the compensation authorities,—which refused to find that Ford's wound was intentionally self-inflicted, whatever reasonable meaning the declarations now under consideration can be given which is consistent with the findings of that tribunal should be adopted by us; and this under the rule that a court of review must look at the evidence in the light most favorable to the party who obtained the verdict on the facts. Then, again, the record now before us contains certain declarations plainly indicating that Ford's wound was not intentionally inflicted; since these declarations apparently were admitted by tacit agreement of both parties, they were not to be ignored, but were proper to be

considered by the compensation authorities, with the declarations relied on by defendant and the other items of proof,—such, for instance, as the significant fact that there was evidence that the knife was not found, after search,—in determining whether defendant had overcome the presumption against self-injury and proved suicide.

In Flucker v. Carnegie Steel Co., 263 Pa. 113, 119, we said that, "when the dead body of an employee is found on the premises of his employer at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment." Had Ford been found at the place and hour disclosed by the evidence in this case, dead, with his throat cut, there would have been a presumption, under the authority just cited, that he had died an accidental death in the course of his employment. Suicide was suggested in the Flucker Case, and we said (p. 118) that the burden was on the employer to show this, adding that "the conclusion of fact as to the manner of [the employee's] death was for the compensation authorities to draw, and, when made by the referee and affirmed by the board, it was not subject to reversal by the court below," citing Poluskiewicz v. Phila. & R. C. & I. Co., 257 Pa. 305. Of course, if the evidence relied on by the claimant was one-sided and conclusively showed a self-inflicted injury or suicide, the presumption to the contrary could not prevail; but that is not this case.

Here, it cannot be said as a matter of law that the award in plaintiff's favor entirely lacks evidential support; no more can it be held that the evidence relied on by the other side is "so clear, positive, credible, and uncontradicted," or so "indisputable in weight" as to justify the court below in holding that the employer had

sustained the burden put on it, and, on this theory, to warrant it in setting aside the findings of the compensation authorities that defendant had not proved the injury which caused Ford's death to be intentionally self-inflicted, or in refusing to abide by the accompanying finding that deceased "met with an accidental injury while in the course of his employment, by which he sustained a lacerated larynx that contributed to his death," which second finding, under the circumstances of this case, logically followed the first one.

The court below, apparently under the mistaken impression that the law gave it the right to pass on the weight of the evidence, and thus to change findings of fact made by the compensation authorities, and apparently entirely overlooking the presumptions in claimant's favor and the burden of proof resting on defendant, states in its opinion, "We think the testimony clearly shows decedent cut his own throat......[and] proves that the injury was intentionally self-inflicted......; it does not support the contrary finding." All of this indicates that the learned court below did precisely what, in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, 165, and, later, in Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 207-8, as well as in other cases there cited, we definitely decided the Workmen's Compensation Act denied the courts power to do; that is to say, it weighed the evidence and changed the findings of fact made by the referee and the compensation board. In the Vorbnoff Case, where the court below had made a like mistake, we said, after carefully examining the statute, "The court acted beyond its power......; [it] had no authority to weigh the evidence and thus change the findings and reverse the final action of the board."

The probable mental condition of Ford when he made the various declarations concerning his injury, and the opinions of the several witnesses in that regard, all have a bearing in this case, as to which the referee, who saw and heard the witnesses, was, above all others, in the best

position to judge. It is difficult to understand how anyone, wounded as was Ford,—with his "wind-pipe wide open" and the great loss of blood which, according to the testimony, he suffered,—could have been able to make the many declarations attributed to him; but, be that as it may, it is not for us, any more than it was for the court below, to weigh the evidence, and thus decide the facts; the facts are for the compensation authorities to decide and the law is for the courts. When findings of fact have been made, only questions of law connected therewith can be ruled upon by the courts. The court below had the right and duty to apply the standard hereinbefore stated, and thus to pass on questions of law connected with the burden of proof, also to determine whether there was any evidence upon the record to support the findings of fact in claimant's favor,—particularly the two ultimate findings to which we have called attention,—or any legally competent evidence for that purpose; but it lacked power to go further and substitute its own findings according to what it conceived to be the weight of the evidence. It should be constantly remembered in administering the workmen's compensation law, not only that the authority of the courts must be found in the statute, but also that the statute evidences a contract: Anderson v. Carnegie Steel Co., 255 Pa. 33, 39; Liberato v. Royer, 281 Pa. 227, cf. 81 Pa. Superior Ct. 403, 408. In the present instance, the compensation authorities kept within their defined powers, under the act, but the court below did not; hence we are unable to sustain its disposition of the case.

The judgment appealed from is reversed; the award is reinstated and affirmed.

Mr. Justice SCHAFFER dissented.