Opinion by
 

 Parker, J.,
 

 The primary question raised in this case is whether I. J. Beals, the claimant, was at the time of an accident an employee of the Brookdale Coal Company as that term is used in the Workmen’s Compensation Act, or an independent contractor.
 

 A referee found that Beals was not an employee of the defendant but that his work was casual in character and not in the regular course of the employer’s business.
 

 A re-hearing was ordered by the board and another referee awarded compensation for total disability, holding that the claimant was not an independent contractor. On appeal the board affirmed that award and on further appeal to a court of common pleas judgment was entered for the claimant for the amount of the award.
 

 We are all of the opinion that the evidence, viewed in a light most favorable to the claimant, is sufficient to support the conclusion of the board that the claimant was at the time of an accident in which he was involved an employee of the coal company and not an independent contractor. It is conceded that if claimant was not an independent contractor, the accident from which his injuries arose occurred in the course of his employment.
 

 An award of a compensation board must be sustained if there is any competent evidence or any inference of fact fairly deducible therefrom supporting the conclusion, though the reviewing court might have arrived at a different conclusion if it had been the fact finding body:
 
 Ford v. Dick Co.,
 
 288 Pa. 140, 135 A. 903. The
 
 *421
 
 compensation authorities are to decide all questions of fact and the courts are to decide those of law; “mixed questions of fact and law......may be reviewed by the courts on the latter aspect alone”:
 
 Vorbnoff v. Mesta Machine Co.,
 
 286 Pa. 199, 207, 133 A. 256.
 

 We will state the facts developed at the hearings upon which claimant depends to sustain the judgment and then consider the legal question arising out of those facts. The claimant, a blacksmith by trade, in 1934 was about 52 years of age and was the owner of a small shop and some smithing tools. He had previously been employed as a railroad engineer and had met with an accident involving a head injury. After that injury he had been employed by some individuals and had done some work at his shop, such as sharpening picks, and had performed some blacksmith work for the defendant cjoal company at its premises. The defendant was engaged in coal mining operations and used mules and mine cars in its operations. It did not have a complete blacksmith shop, but it did have a forge and some tools.
 

 A few days before August 14, 1934, the claimant was engaged by the coal company to do general blacksmithing at its premises, the work to consist of shoeing mules and repairing traces, tail chains and mine cars. The coal company was operating under a contract with United Mine Workers of America, of which organization the claimant was a member, and the defendant contracted to pay the claimant for his services as a blacksmith the union scale of 71.4 cents per hour. At the time of the hiring defendant’s foreman said to claimant’s wife that the company would have considerable work for him and requested her to notify claimant to report for work. On August 11, 1934, claimant took his tools to the coal property and, by direction of the coal company’s foreman, welded rings in traces for the mules. On the morning of August 14, claimant,
 
 *422
 
 while shoeing a mule, was kicked and severely injured. The coal company’s foreman directed the claimant from time to time as to the particular tasks he was to perform. During the time claimant Avas working for the coal company, he did not maintain an open shop and for some little time prior to the accident claimant did little work there and such as he did perform there was for himself or consisted of sharpening picks and repairing picks and shovels. Claimant had worked for the company at other times and, prior to the last hiring, had sought employment several times. After the last solicitation he was notified to report for work and told that there would be “lots of work for him.” While claimant had kept tools at his house for twenty-five years and had done some blacksmithing there, he had been employed by the Pennsylvania Railroad Company as an engineer and had been employed by other individuals in the relation of master and servant. The contention of appellant is that claimant was an independent contractor.
 

 “The legal principle, which solves the inquiry as to whether a contract creates the relation of employer and employee between the parties to it or makes the performer of it an independent contractor, has been recently laid down in
 
 Smith v. State Workmen’s Insurance Fund,
 
 262 Pa. 286, where we said: ‘By this contract the employer reserved to himself no right in connection with the work to be done, excepting the right to question the sufficiency of the result accomplished, measured by the requirements of the contract...... Where this latter feature is of the substance of the contract it has been uniformly held, and nowhere more strictly and explicitly than in our own State, that the one employed is an independent contractor. The general rule is thus stated — where a person lets out work to another, the contractee reserving no control over the work or workmen, the relation of contractor and con
 
 *423
 
 tractee éxists and not that of master and servant...... If one renders service in the course of an occupation, representing the will of his employer only as to the
 
 result
 
 of his work, and not as to the
 
 means
 
 by which it is accomplished, it is an independent employment.’ Speaking on the question here involved in
 
 McColligan v. Penna. R. R. Co.,
 
 214 Pa. 229, we held: ‘A master is one who stands to another in such relation that he not only controls the result of the work of the other but also may direct
 
 the manner
 
 in which the work shall be done. ....... The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and to direct both what work shall be done, and the way and manner in which it shall be done’ ”:
 
 Kelley v. D., L. & W. R. R. Co.,
 
 270 Pa. 426, 428, 113 A. 419.
 

 “When, according to these tests, the evidence shows one, claiming as employee of a defendant, to be an independent contractor, relief under the Compensation Act must be denied; but neither the compensation authorities nor the courts should be solicitous to put claimants in that position when a reasonable view of the evidence warrants a finding that the injured person was an employee”:
 
 Gailey v. S. Workmen’s Ins. Fund,
 
 286 Pa. 311, 314, 133 A. 498.
 

 Now the contract between the parties was not that the claimant should shoe a certain mule or mules but that he should perform such general blacksmithing as the employer directed him to do. It is a fair inference from all the evidence favorable to claimant that he was ¡to shoe mules, repair cars, chains and traces when and as he¡ was so directed by his foreman. The service was to be performed on the coal company’s premises and the compensation was fixed on an hourly basis. The relationship between plaintiff and the coal company was not essentially different from that between the company and any other laborer except that this claim
 
 *424
 
 ant brought to the service of his employer superior skill and some of his own tools. It is true that in the exercise of that skill he was called upon to use some independent judgment, but that did not affect the fundamental relationship between the parties. The time and manner of performing the work was subject to the control of the employer. The work was required to be done on the coal company’s premises where it could be more conveniently supervised and controlled. Several of the features to which we have referred if taken individually would not be controlling but all taken together warranted the conclusion reached by the compensation authorities. The legal deductions drawn from the facts found were warranted as a matter of law. The evidence would not warrant a finding that the employment was casual in character and, in addition, the repairing of mine cars, tail chains and rings was in the regular course of the coal company’s business.
 

 This brings us to a second question raised by the appellant. Was the claimant at the time of the last hearing entitled to an award for total disability and to a judgment on that award? We are of the opinion that the evidence will not support a judgment for the amount found. The claimant’s own evidence clearly demonstrates that at the time of the hearings in 1936 the claimant was not totally disabled. This is shown by his own testimony to which we will refer. At the hearing in November, 1934, the claimant testified that he had a blacksmith shop where he did some work himself and that he did some repairing of picks and putting steel in picks and shovels. At the hearings in 1936 he testified as follows: “Q. You had a blacksmith shop in Brookdale, did you not? A. I have a shop there yet. Q. Are you able in any way to do the kind of work that you were prepared and able to do prior to your accident? A. Light work. Sharpening tools or light work, that’s all. Q. But you do accept work for other people?
 
 *425
 
 A. I told you fixing picks or a little light work. Q. For any miner or any company, or anybody else? A. No, Fm working for a company myself now. I have my own tools, and some of the work I do in my own shop because they don’t have their shop fitted up. But now, I’m working for them. Q. Working for who? A. I’m working for a contractor now. Q. Now, where else have you worked? You seem to be in a hurry to get away from here to go to work? A. I am working now. I don’t want to miss a day. Q. What job do you have now? A. That is my business, not yours. Q. No? We have the perfect right to know that. A. John F. Oasey. Q. What is John F. Casey’s business? A. He is a contractor. Q. What is his business? A. Contracting. Q. Contractor for what? A. Anything at all. Q. And what kind of work are you doing for him? A. I am watching at night. Q. Night watchman? A. Yes, sir, and doing a little blacksmithing, sharpening tools.” The ability of claimant to do light work was also supported by the testimony of at least one physician.
 

 It seems clear, on the basis of this testimony coming from the mouth of the plaintiff himself, that he was not totally disabled for the entire period from the date of the accident until the time of the final hearing and that it could not be assumed that he would be totally disabled thereafter. The evidence, however, will support a finding for partial disability and perhaps for total disability for a period following the accident, and it may be that by this time there has been a change in his ¡earning power.
 

 In our opinion it was the duty of the compensation authorities to consider these uncontraverted facts along with other facts in evidence as to attacks of epilepsy and loss of memory. It is apparent that when the case reached the court below the record disclosed that the referee and board had not performed their whole duty and that the case could not properly be disposed of
 
 *426
 
 without having the compensation authorities make findings as to the extent to which the claimant was partially disabled and the extent and time during which he was totally disabled. Consideration should have been given to the earnings of the claimant and his ability to secure employment as well as all other factors that affected his earning power/ Unless this is done a proper award cannot be made. We think it was the duty of the court below to sustain the employer’s exceptions to the findings of fact as to the extent of disability and to remit the record to the board “for further hearing and determination.”
 

 Judgment reversed, and the record will be returned to the court below to the end that it may be remitted to the Workmen’s Compensation Board for further proceedings not inconsistent with this opinion.