Glenn, Appellant, *v.* State Workmen's Insurance Fund et al.

122

Argued September 27, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Louis Gordon,* for appellant.

*Paul H. Rhoads,* with him *John Fox Weiss,* of *Weiss & Rhoads,* for intervenor, appellee.

OPINION BY STADTFELD, J., October 28, 1938:

Rose Glenn of Harrisburg, Pa., filed a petition for an award under the Workmen's Compensation Act for the death of her husband, Samuel Glenn, who was killed January 29, 1937, while working in Harrisburg, Pa., for his employer, S. W. Shoemaker and Son, contractors. The only question in dispute is whether or not the widow was living with her deceased husband or actually dependent upon him for support at the time of his death.

The widow's claim was disallowed by the referee, because he found she was not living with her husband at the time of his death, and not dependent on him for support. The findings of fact and conclusions of law of the referee were affirmed by the board and the Court of Common Pleas of Dauphin County.

The referee made, inter alia, the following findings

of fact: "Sixth: That the deceased, Samuel Glenn, and the claimant, Rose Glenn, were married on March 16, 1931, in Baltimore, Maryland. According to her testimony, she lived with Samuel Glenn as his wife at various places until the year 1935, when they separated and Samuel Glenn went to Philadelphia. Much of the claimant's testimony your referee cannot accept, in view of the evidence of disinterested witnesses and the exhibits in the case. One William T. Reeves, an officer of the police force in the city of Harrisburg, testified that in September, 1933, he found Rose Glenn at 654 Cumberland St., Harrisburg, suffering from a bullet wound which she stated was inflicted by one Charlie Robinson, with whom she was living at that address. She was later convicted and sentenced in the courts of Dauphin County, for having committed perjury in connection with this same affair. This incident is related because of the claimant's testimony that she was living with her husband at that time and also in support of your referee's refusal to accept her testimony. The evidence contains other episodes of this character, all of which strengthens the fact that the claimant was not living with the deceased for some time prior to his death, and was not dependent upon him for support. At the time of the death of the decedent, the claimant was found at Baltimore, living with another man, and her actions at that time would not tend to indicate that she was dependent to any extent upon the deceased. There was evidence that the deceased was arrested on May 11, 1936, and on May 12, 1936 a hearing was held before Alderman Richards on charges of non-support. At that time no order was made, but the deceased agreed to pay Rose Glenn $5 per week. There is no competent evidence to support a finding that any payments were ever made under this agreement, and there is ample evidence to the effect that subsequent conduct on the part of the claimant constituted a complete abandonment of the marital status. From a careful

consideration of all the facts in the case, your referee must find as a fact that the claimant was not living with the deceased at the time of his accidental death and was not dependent to any extent upon him for support."

The sole question for our consideration and determination is whether there is legally competent testimony in the record to support the findings of fact and conclusions of law of the referee: *Gerst v. Smith-Faris Co.*, 107 Pa. Superior Ct. 30, 34, 35, 162 A. 490: "If the findings are based on any legally competent evidence, or on an inference fairly deducible therefrom, the award must be sustained, though we might differ from the conclusion thus reached. This therefore requires an examination of the testimony in the case." To the same effect, see the opinion of the Supreme Court in *Ford v. A. E. Dick Co.*, 288 Pa. 140, 135 A. 903.

The uncontradicted record in this case establishes the fact that this claimant, Rose Glenn, (with numerous aliases) was on October 23, 1933, arraigned in the Court of Quarter Sessions of Dauphin County on a charge of perjury, and pleaded guilty. She was thereupon sentenced to pay a fine, cost of prosecution and undergo an imprisonment in the Dauphin County prison for a term of six to twelve months. In sec. 5, cl. (a) of the Act of 1887, P. L. 158, 28 PS sec. 315, it is provided: "In such civil proceeding, a person, who has been convicted in a court of this Commonwealth of perjury, which term is hereby declared to include subornation of perjury, shall not be a competent witness for any purpose, although his sentence may have been fully complied with, unless the judgment of conviction be judicially set aside or reversed, or unless the proceeding be one to redress or prevent injury or violence attempted, done or threatened to his person or property, in which cases he shall be permitted to testify."

The claimant testified that she did not live with Charles Robinson. It is not necessary for us to decide

in this case whether she was legally incompetent to testify or whether the act affects merely her credibility. Officer W. J. Reeves, Mr. E. L. Price and Mr. Ernest C. Minor, all of whom are impartial, independent witnesses, testified that she had lived with one Charles Robinson, known as "Lowdown" on various occasions subsequent to 1931, when she and the decedent were married. The testimony of officer Reeves is in part as follows: "Q. This place that you testified to, 654 Cumberland Street, was Rose Washington and this man by the name of Robinson living together there? A. Well. Rose gave her name at the time, was Rose Washington, alias Rose Robinson, alias Rose Glenn. Q. She did at that time give the name of Robinson as her married name? A. Yes. She was living with Robinson at that time. Q. You know of your own knowledge that she was living with a man by the name of Robinson at 654 Cumberland Street at that time? A. That's right. Q. I don't believe you fixed the year of this, you said September, do you recall? A. 1933, I think it was. If I may refer to my record I can give you that."

Section 307 of the Workmen's Compensation Act of 1915 provides (77 PS sec. 562) : "...... No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him for support. ......"

In *Parpati v. Cambria Steel Co.*, 70 Pa. Superior Ct. 202, the facts were that the wife at the time of the decedent's death was living with her parents. The court found that the wife had acquiesced in the separation and abandoned the marriage. On p. 205 it was stated: "They were not maintaining a home, the family relation did not exist, there was no communication between the parties, the husband although recently married was not sufficiently interested in the welfare of his wife to inform her where he was, what he was doing or to transmit funds to her for her support."

Likewise in *Allem v. E. J. Romig & Son,* 100 Pa. Superior Ct. 502, it appeared that the husband and wife separated by mutual consent and each returned to the home of his or her parents. For a while the decedent visited his wife, but later refused to come to see her and indicated that he would not be liable for any of her debts. The wife was supported by her father and partly by her own earnings. At one time the wife consulted an attorney with reference to securing a court order to compel the husband to support her. The court held that the widow was not dependent upon her husband for support and that an award could not be made. On pp. 504, 505, the court stated: "These facts, supported as they are by competent evidence, fully warrant the ultimate conclusion of fact that when the husband died claimant was not actually dependent upon him for support. 'The right of claimant was determined on a consideration of facts, a review of which we are not authorized to entertain': *Karpati v. Cambria Steel Co.,* 70 Pa. Superior Ct. 202, from which this case is not distinguishable on its facts, in which it was decided that to hold the employer to make compensation it must affirmatively appear that the wife was actually dependent. It seems to us that appellant acquiesced in her husband's repudiation of his legal obligation to support her. This is the real criterion in cases of this character: *Creasy v. Phoenix Utility Co.,* 276 Pa. 583."

A similar case is *Logan v. Pot Ridge Coal Co.,* 79 Pa. Superior Ct. 421, where this court stated, on pp. 423, 424: "The second contention grows out of the following situation: At the time of decedent's death, he was not living with his wife. They were married in 1904, and separated in 1910. In 1916 a support order was made by the Quarter Sessions of Somerset County, and he was sent to jail for failure to pay. He was released, as the compensation board has stated, 'with the understanding that he should make payments.' He did so at irregular intervals until July 1, 1918. At the time of

his death, his wife was 'not actually dependent upon him for support but was, as stated (by the board) supporting herself and not only supporting herself, but had abandoned the hope of being supported by the deceased.'......"

As to the proceedings for support, Alderman Richards before whom the proceedings were instituted, testified that he never made any order for support. But regardless of the alderman's testimony, the subsequent conduct of claimant shows a complete abandonment of the marital status. In the cases where courts have relied upon a support order, there was not evidence of subsequent unlawful and meretricious conduct as in the instant case.

The Workmen's Compensation Act was designed to aid those relatives of the deceased who were dependent upon and relied upon the support and aid of the decedent. In the instant case, claimant was a frequenter of disorderly houses and lived regularly with at least two other men, i. e., Charles "Lowdown" Robinson and the man in Baltimore.

A careful examination of the entire testimony convinces us that the referee's findings are fully supported, and that the claimant was not living with her husband at the time of his death and that she was not dependent upon him, because she was living with other men and therefore not entitled to compensation.

It is not necessary to advert further to the testimony of the witnesses on behalf of claimant. The referee saw and heard them and their credibility was for his determination. It is not our function to make new findings. We see no error which would warrant a reversal of the judgment.

Judgment affirmed.