Stevens v. Publishers Agency, Appellant.

Argued November 14, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*James J. Burns, Jr.,* for appellants.

*Fred J. Jordan,* with him *Murray J. Jordan* and *Edwin B. Goldsmith,* for appellee.

OPINION BY ARNOLD, January 17, 1952:

The sole question in this workmen's compensation case is whether the claimant was defendant's employe or an independent contractor. The compensation authorities held that he was an employe, the lower court affirmed, and defendant appeals.

Claimant's testimony disclosed that the defendant was engaged in the sale of magazines and books, the actual sales being made by individuals such as the claimant.

In September, 1947, one Giles (described by claimant as defendant's crew manager) requested the claimant, then 19 years of age, "to go to work under him for the company," and the claimant began the sale of the publications in question. After he went to work Giles had him sign one of defendant's "agreements," telling him that it was an "employment application." The sole defense to the claim was this contract, which the claimant had signed before he reached his majority. It describes both him and Giles as independent contractors.

The actual document raises many suspicions. When the claimant signed the contract the defendant had not yet executed it. The agreement recited that it was

"made at Philadelphia," where claimant had never been, between the defendant as one party and the claimant and Giles as the other party. No copy of the contract was ever given to the claimant.

The paper provided, inter alia, that neither he nor Giles was in any way an employe, and further that he and Giles were to sell "as he [they] saw fit free from the domination or control" of defendant. Giles, too, signed the contract, and in it there was no differerentiation between the position of Giles and that of the claimant. But the paper also provided that the defendant had the right to reject sales; that the sales had to be at prices acceptable to the company; and that it had the right to fix, from time to time, the profit to the claimant. Giles directed sales and chose "the stuff he wanted [claimant] to [sell]"; and the defendant provided the transportation and samples and sales materials.

Claimant had no books, magazines or materials of his own; no automobile of his own; and he was taken to the territory in which it was demanded that he work, and indeed the very street was designated. He started to work at Meadville. He then expressed to Giles that he wanted to work Akron, Ohio. Giles told him that he had been advised this could not be done, and that he must go to Oil City or be discharged. To lose no selling time Giles ordered that they leave for Oil City on a Sunday night, when the accident occurred causing serious injuries to the claimant. This was in spite of the fact that the so-called agreement did not circumscribe territory and stated that the claimant was free as to time and the conduct of sales.

Subsequently the claimant received a letter from defendant's president stating: "If you will *follow the instructions* of Mr. Lyons and Mr. Giles . . . you can make a real success of *your job* . . ." (Italics supplied).

But under the terms of the contract Giles was in no superior position to that of the claimant. Claimant understood that Lyons was a branch manager for defendant. While Lyons testified that he, too, was an independent contractor, it is significant that he did not deny that he had visited the claimant in the hospital and in the presence of claimant's mother stated that "he received word" of the accident from the *defendant* and that "everything will be taken care of and you will receive a compensation check for every week you are off work." Nor did any of the defendant's testimony refute this.

It is well settled that the designation given a claimant by the alleged employer is not conclusive as to whether he is an employe or an independent contractor.[1] Likewise the method of payment for his services is not determinative,[2] nor is the fact that no provision was made (as here) for social security or income tax.[3]

We are of the opinion that the evidence amply justified the findings of employe relationship. "The characteristic of the employe relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the independent contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result."[4] "It is not the fact of actual interference or exercise of control by the employer, but the existence of the right or authority

---

[1] *Feller et al. v. New Amsterdam Casualty Company*, 363 Pa. 483, 70 A. 2d 299.

[2] *Blum Unemployment Compensation Case*, 163 Pa. Superior Ct. 271, 60 A. 2d 568.

[3] *Shields v. William Freihofer Baking Company et al.*, 147 Pa. Superior Ct. 455, 24 A. 2d 54.

[4] *Johnson, Admr. et al. v. Angretti et al.*, 364 Pa. 602, 607, 73 A. 2d 666.

to interfere or control, which renders one a servant rather than an independent contractor."[5]

In *Shields v. William Freihofer Baking Company et al.*, 147 Pa. Superior Ct. 455, 24 A. 2d 54 (allocatur refused by the Supreme Court) we held the claimant to be an employe even though the written contract under which he sold defendant's products called him a "distributor," and provided that defendant was to "assist" him in establishing a route upon which he used his own equipment on which his name appeared as "distributor." The contract likewise permitted him to sell non-competing merchandise. There were no social security payments and he was paid on a commission basis.[6]

In the instant case the defendant retained the factors of control as to time, territory and manner of sales. Any inferences that the claimant was an independent contractor were also rebutted by the admissions of the defendant as to his status. The relationship must be determined from the peculiar facts of each case.

Although the burden was on the claimant to establish the employe relationship, yet we have frequently stated that "neither the compensation authorities nor the courts should be solicitous to put claimants in that position [of independent contractors] when a reasonable view of the evidence warrants a finding that the injured person was an employee.": *Gadd v. Barone et al.*, 167 Pa. Superior Ct. 477, 481, 75 A. 2d 620.

Judgment affirmed.

---

[5] *Gadd v. Barone et al.*, 167 Pa. Superior Ct. 477, 479, 75 A. 2d 620.

[6] See also *American Writing Machine Co. v. Unemployment Compensation Board of Review*, 148 Pa. Superior Ct. 299, 25 A. 2d 85.