Rodgers v. P. G. Publishing Co.

*John P. S. O'Connor* and *McArdle, Harrington & McLaughlin,* for claimant.

*Irwin M. Ringold,* for defendants.

LENCHER, P. J., July 8, 1960.—Since this court has exclusive jurisdiction here in the Fifth Judicial District, Allegheny County, to hear appeals from the Workmen's Compensation Board under the Act of May 27, 1943, P. L. 691, 77 PS §872, we have heard and carefully considered the appeal of the widow-claimant above named from the order of the Workmen's Compensation Board dismissing the claimant's petition for compensation. The board's findings and conclusions terminate with the following:

"Weighing the respective elements pro and con, of an employer-employee status, we are constrained to agree with the referee that Rodger was an independent contractor and not an employee of the Post-Gazette."

Since the findings of fact approved and adopted by board are supported by competent testimony, are consistent with each other and with the conclusions of law, and can be sustained without a capricious disregard of the testimony, we may not set aside or substitute different findings. They are just as binding on us when they are adverse to the claimant as they would have been if they had been found in her favor: Bowers v. Schell's Bakery, 152 Pa. Superior Ct. 112, 31 A. 2d 442; Landis v. General Motors Corporation, 180 Pa. Superior Ct. 332, 119 A. 2d 645. Whether this court might have found otherwise is irrelevant and immaterial; the legal principles constrain us to affirm.

The claim is made by the widow claimant because of the death of her husband, James R. Rodgers, on July 24, 1958, due to accidental injuries sustained by him

two days earlier. The fatality resulted from an automobile accident at the intersection of West Carson Street and the old Point Bridge, Pittsburgh. The issue to be decided is a single one, whether decedent was an employe of defendant, P. G. Publishing Company, or an independent contractor. Decedent signed a contract with the defendant on January 27, 1958, as a distributor for defendant's daily newspapers. It was in the nature of a territorial franchise for Kennedy Township in Allegheny County. The record is quite lengthy, although only claimant and defendant's circulation manager testified. Claimant established marriage and dependency. Most of her testimony, over objections by defendant's counsel, related to the terms of the subject contract, their interpretation and execution by her decedent. The contract is part of the record and speaks for itself. An examination of its salient provisions is therefore necessary in order to ascertain the intention of the signatories in the light of decisions of our appellate courts. Defendant stresses as follows:

"It is understood and agreed that the Distributor is not an employee of the Company or of the Pittsburgh Post-Gazette, and that the distribution of the papers received by the Distributor and any subsequent transportation thereof, the hiring of assistants or other personnel for the purpose of transporting or distributing the papers purchased by the Distributor or the discharge of such assistants or personnel and any other related functions thereof are under the control of and are the sole responsibility of the Distributor."

Designation given a claimant in a contract is not conclusive whether he is an employe or an independent contractor: Stevens v. Publishers Agency, 170 Pa. Superior Ct. 385, 85 A. 2d 696. The mere nomenclature of the independent agency written into the contract is

not conclusive; we are not to be solicitous to place the claimant in the category of an independent contractor when a reasonable view of the evidence warrants a finding of employer-employe status: Thomas v. Bache, 351 Pa. 220, 40 A. 2d 495.

As reviewed in the leading cases, including the Thomas case, supra, and cases therein cited, the method of payment for his services is not determinative as to whether a claimant was an employe or independent contractor, nor is the fact that no provision was made for Social Security or income tax. The characteristic of the employe relationship is that the master controls not only the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the independent contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result. It is not the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control which renders one a servant rather than an independent contractor. Each problem in this area must be determined from the peculiarity of each case though no single fact is conclusive in its favor. Thus, it is significant where there is no provision for the deduction of Social Security and other like charges: Eggelton v. Leete, 186 Pa. Superior Ct. 542, 142 A. 2d 777.

Where control is not reserved over the means, the relationship is that of independent contractor, and, conversely, where such control is reserved, the relationship is that of servant or employe: Kelley v. Delaware, Lackawanna & Western Railroad Co., 270 Pa. 426, 429, 113 Atl. 419.

The Workmen's Compensation Act of June 21, 1939, P. L. 520, sec. 1, 77 PS §§21, 22, declares the terms "employer" and "employee," as there used, to be syn-

onymous with "master" and "servant." The relation of master and servant exists where the employer has the right to select the employe, the power to remove and discharge him, and the right to direct both what work shall be done and the way and manner in which it shall be done: McColligan v. Pennsylvania Railroad Company, 214 Pa. 229, 63 Atl. 792; Restatement, Agency, §220. Generally where there is a case of letting out work to another without retaining any control over the work except as to results accomplished, and the alleged employe is not carried on defendant's payroll, he is usually given the status of an independent contractor. Here defendant fixed the point of distribution of delivery of newspapers to decedent, and it alone had the authority to change the site; defendant fixed the price for the papers and it defined the distributor's area of customers; it had the right to discharge decedent at any time; a transfer of the distributorship could be accomplished only upon approval by defendant and signing of a similar contract for conduct of the business by the new party. These incidents or attributes of the distributorship are comparable to those present in a dealer's automobile franchise or for the operation of a soft ice cream unit of a national concern. Limitations on the area, price of the product, termination of the franchise do not constitute such an invasion of private rights as to result in an employer-employe relationship. The distinguishing criterion is the right to control the means of accomplishing the result. Where control is not reserved over the means, the relationship is that of independent contractor, and, conversely, where such control is reserved, the relationship is that of servant or employe: Lenhart v. Emmons & Co., 99 Pa. Superior Ct. 180; Beals v. State Workmen's Insurance Fund, 131 Pa. Superior Ct. 418, 200 Atl. 178; Gailey v. State Workmen's Insurance Fund, 286 Pa. 311, 133 A. 498; Healey v. Carey,

Baxter & Kennedy, Inc., 144 Pa. Superior Ct. 500, 19 A. 2d 852.

In addition to the fact that the now deceased was not carried on the records as an employe, had no Social Security status, matters to be considered though not conclusive, it is important to see that there is no control here reserved over the means and manner of the accomplishment of the work itself, but merely as to the result. Here, we have a distributor who is not to be distinguished from newsboys who buy papers and resell them on their own account: Balinski v. Press Publishing Company, 118 Pa. Superior Ct. 89, 179 Atl. 897. And we are to treat the conclusions of the compensation authorities as verdicts of a jury, resolving the evidence in favor of the successful party, giving it the benefit of all favorable inferences (Ford v. A. E. Dick Co., 288 Pa. 140, 135 Atl. 903), and especially so where there is agreement as to facts where the court is to say whether the claim is compensable: Sgattone v. Mulholland & Gotwals, Inc., 290 Pa. 341, 138 Atl. 855. The record shows sufficient competent testimony for the finding, and inferences revealed by the board, when it says:

"The most important aspect of an employee status favorable to the claimant in this case is the fact that under the contract, the route list of customers, which is the very essence of the agreement from the standpoint of financial return, is the 'sole and exclusive' property of the defendant."

It is clear that defendant exercised ownership over this valuable property asset. However, in retaining these named subscribers, decedent was obligated to render efficient service. To do so, he benefited himself as well as defendant. The same is true of any new subscribers obtained by him. His return or profit was variable, depending upon his initiative and industry. Militating against an employe status, we find from

the contract and testimony of record that defendant could not dictate the manner in which the work was to be done, nor what hours decedent had to observe in its performance. Defendant publishes a morning newspaper, so it is obvious that early delivery was required before the subscriber left for work. It was decedent's job to meet that time factor but the schedule of deliveries was entirely within his discretion. He provided his own delivery equipment and carriers to make distribution, but fixed his own time and method of making collections. He was not barred from engaging in other gainful employment and he could have used other personnel in the paper distribution project with a minimum time spent by himself, so long as the result in net sales income to the defendant was satisfactory to it, from the distribution of papers. Although not a controlling factor, nevertheless a contributing factor in negativing an employer-employe relationship was that decedent did not participate in fringe benefits of other employes, nor, as already indicated, did the newspaper withhold any Social Security tax or pay any unemployment compensation premiums for the decedent.

Conceding the case to be close, an analysis of the cases cited for claimant in a splendid brief shows clear distinction from the facts at bar. Thus, in Shields v. William Freihofer Baking Company, 147 Pa. Superior Ct. 455, 24 A. 2d 54, charge account customers paid their bills directly to defendant, and no sale of goods was made to the distributor, all cash receipts were turned over to defendant each day, route supervisors checked out any sales lag and the cumulative evidence indicates strong control and direction as to how the work was done. In the present case, the newspapers were sold to deceased who could himself determine what he would charge for them on resale, and his gross receipts were not turned over to defendant but only

the amount of the wholesale price of the papers he purchased.

The case of Leinbach Company, Inc., v. Unemployment Compensation Board of Review, 146 Pa. Superior Ct. 237, 22 A. 2d 57, may be similarly distinguished; at all times the employer controlled the merchandise sold and all orders taken were subject to the approval of the company. In Eggelton v. Leete, 186 Pa. Superior Ct. 542, 142 A. 2d 777, the employer could direct claimant as to what lumber to cut, what not to cut, how much to cut and the size of the logs. Thus, it appeared that the employer exercised control as to the work to be done and as to the manner of performing it. In Stevens v. Publishers Agency, 170 Pa. Superior Ct. 385, 85 A. 2d 696, there were strong indications that the minor claimant had no knowledge of the alleged agreement. He did not purchase the magazines from the company, he had no control over his selling price, and he was taken to the sales area by his employer and instructed as to which streets to cover. Every aspect of his employment was controlled by the company. Potash v. Bonaccurso, 179 Pa. Superior Ct. 582, 117 Atl. 803, has no relationship to the present case: Except for the religious rite performed in his work, claimant was completely under the control of his employer in the performance of his duties. Bogan v. Smoothway Construction Company, 183 Pa. Superior Ct. 170, 130 A. 2d 207, is likewise not related to this case, and stands only for the purpose that an independent contractor may step out of this classification and become an employe by performing tasks with the consent of the employer normally done by another employe.

In Greap v. Oberdorff, 178 Pa. Superior Ct. 153, 113 A. 2d 339, the court simply ruled that a man who in all respects is an employe may not be construed an independent contractor simply because he was of such

skill as not to require direction from his employer in the performance of his work. In Gadd v. Barone, 167 Pa. Superior Ct. 477, 75 A. 2d 620, the court emphasized that, in addition to the power to fire at will which is a strong indication of an employer-employe relationship, deductions were made from claimant's pay which is consistent only with an employer-employe relationship. The deduction feature was a heavy factor in this decision. In Balinski v. Press Publishing Co., 118 Pa. Superior Ct. 89, 179 Atl. 897, the court relied primarily on the fact that a vendor-vendee rela-' tionship had been established which is primarily the situation here although one step removed.

It is true that the Supreme Court directs us not to be solicitous to declare the status of an independent contractor in such cases as the one at bar. Yet we may not depart from the other guiding principles which deny a reviewing court en banc power to commit the board to certain findings of fact and inferences that a court might have made had the court been fact-finders. Granted there are only the two witnesses at bar, defendant's agent and the widow, but credibility and weight of their evidence and the inferences arising therefrom are not to be passed on by this court, but are matters for the board to determine. The writing in evidence is not conclusive, it subordinated the claimant's husband for one general object that the result would accord with the design and practice of the newspaper with all of its distributors. Within that design and general plan, claimant's husband worked according to his own initiative. Other than the broad indication, supra, so that result could be achieved, no right of control existed as to the means and manner of performance which were exclusively under the direction of the now deceased. Accordingly, we make the following

90

*Order*

And now, to wit, July 8, 1960, after careful consideration of the entire record, the exceptions are overruled, the appeal is dismissed, the findings of fact, conclusions of law and order of disallowance are affirmed and judgment is entered in favor of P. G. Publishing Company, defendant, and Aetna Casualty Co., insurance carrier.