734

## DuGross v. ABC Express, Inc.

*Pirillo & Carabello*, for plaintiff.

*Swartz, Campbell & Detweiler* and *D. F. Kaliner*, for defendants.

SPORKIN, J., December 3, 1968 — Louise DuGross, claimant, filed two fatal claim petitions, one against ABC Express, Inc. (ABC) alleging inter alia that the death of her husband Michael DuGross (DuGross) was due to an accidental injury in the course of his employment with ABC, and the other against Strawbridge & Clothier (Strawbridge) on the theory that the death of DuGross occurred while an employe of Strawbridge.[1]

Both ABC and Strawbridge questioned the employment status and the accidental death. Following

---

[1] While the Insurance Company of North America (INA) and Aetna Insurance Company (Aetna) appear as codefendants in the above captioned matter, they are not at all referred to in these compensation petitions.

a hearing on the petitions, the referee dismissed claimant's petition against Strawbridge and concluded that DuGross was an employe of ABC and entitled to death benefits from ABC "and/or its insurance carrier Insurance Company of North America" (INA), and entered a compensation award accordingly.

From the referee's decision, ABC and its insurance carrier (INA) appealed to the board and claimant likewise filed an appeal[2] from the dismissal of her claim against Strawbridge. Thereafter the board affirmed the referee's decision upholding the award against ABC and its insurance carrier (INA) and dismissing claimant's petition against Strawbridge.

On motions of ABC and its insurance carrier (INA) and claimant, writs of certiorari were issued which brought these matters before this court and by stipulation of counsel the compensation appeals were consolidated for the purpose of argument and disposition.

After reviewing the transcript of the record and the applicable law in the light of the briefs and oral arguments before us, we affirmed the board, and dismissed the appeal of ABC and its insurance carrier (INA) and the appeal of claimant.[3]

ABC and its insurance carrier (INA) and claimant have now appealed to the Superior Court and this opinion is filed as required by the Superior Court Rule No. 46.

The facts may be summarized as follows: DuGross was the driver of a truck owned by ABC. ABC had a contract with department store operated by Strawbridge to supply trucks and drivers to Strawbridge for the hauling of its merchandise.

---

[2] It should be noted that claimant's appeal was taken merely as a "protective measure" against the possible reversal of referee's findings.

[3] We dismissed claimant's appeal as moot.

On January 19, 1966, while loading his truck, Du-Gross pulled on a rope; the rope apparently slipped, DuGross fell backward, struck his head and was knocked unconscious. Having been subject to a preexisting heart defect, he died quickly without regaining consciousness.

A controversy arose as to whether DuGross was in the employ of ABC or of Strawbridge, and to resolve the issue, the widow of DuGross filed companion claim petitions against both ABC and Strawbridge. ABC and Strawbridge questioned the employment and also the causal relationship between the accident and death.

Claimant's evidence began with the testimony by an ABC truck driver's helper, Edmond J. Schneider, who had worked with DuGross for five months and was working with him at the time of the accident. The witness described the loading of a sofa from the main store of Strawbridge in central Philadelphia onto the truck, and DuGross' fall while pulling on a rope used in this loading process. Dr. David Gelfand, a cardiologist, gave his opinion, from examining Schneider's report of the accident and the report of an autopsy performed on DuGross, that the fall produced a ventricular tachycardia and arrhythmia; that those heart irregularities, superimposed upon a preexisting arteriosclerotic heart disease, brought about the death, and that the sequence made the death attributable to the accident. Dr. Marvin Arronson, a pathologist employed by the City of Philadelphia, and whom ABC called as its witness, stated that in his opinion the cause of death was arteriosclerotic heart disease, but that he was "not able to form an opinion with reasonable medical certainty; that there was or was not a causal relationship between the incident and the death." The autopsy, he said, showed a preexisting hardening of the coronary arteries and

a healed myocardial infarction, or area where the heart muscle had died; he had found no sign of a bruise or other physical injury to the decedent's body, externally or internally; but he conceded that a blow which would not cause serious harm to an average man might cause significant injury to one afflicted by arteriosclerosis. However, he repeated that he could not venture a definite opinion one way or the other in this case.

On the basis of Dr. Gelfand's positive testimony, and of Dr. Arronson's refusal to commit himself either way, it is clear that we must accept the referee's finding and the board's affirmation of it, that DuGross' fall constituted an accident within the meaning of The Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, as amended, and that the accident caused the death. " 'The credibility of expert witnesses and the weight to be attached to their testimony are matters exclusively for the board. . . The board may accept or reject, in whole or in part, the testimony of any witness; and the credibility and the weight of testimony of one who qualifies as an expert are not reviewable as a matter of law' ": Downing v. Leechburg Mining Company, 195 Pa. Superior Ct. 575, 579 (1961).

We now pass to the second and perhaps more complex problem, as to which defendant employed the decedent.

The witness, Schneider, who had worked on the truck with DuGross, testified that he and DuGross were "sublet" by ABC to Strawbridge to haul furniture with an ABC truck; that a Strawbridge supervisor, Harold Leadbeater, gave them their specific instructions; and that the witness considered himself and DuGross as "working for" Strawbridge. No one from ABC gave directions as to activities at the department store. However, ABC paid the salaries,

withheld income tax and social security deductions, Schneider said, with the remark "I am an employe of ABC."

Strawbridge produced its receiving and traffic manager, Fred G. Sheddy, who had negotiated the store's contract with ABC. Sheddy testified that ABC was to supply tractors and trailers, as well as ordinary trucks, along with drivers and helpers, to haul merchandise between the store and its warehouse or branch stores. The men on the trucks were chosen by ABC; they reported to Strawbridge and were told there what they had to do, but not how to do it, or what routes to take, or how to operate their trucks. Strawbridge had no control over ABC's choice of men, except to complain to ABC of misconduct; Strawbridge did not fix salaries, or possess the right of discharge, or take part in negotiations with teamsters' union. It did not supply or pay for gasoline, oil or insurance of any kind; all that was done by ABC. When DuGross died, ABC supplied a replacement driver. The drivers submitted a time record to ABC, and ABC sent a copy to Strawbridge with the hauling bills, based on time and mileage. There was no written contract for the hauling arrangement. On the matter of workmen's compensation insurance, the witness admitted he had no personal knowledge. When not in use, the trucks were kept at the Strawbridge platform; at night, a Strawbridge employe kept watch on them. DuGross reported directly to Strawbridge in the morning for work, and left from there each evening. Strawbridge employes gave specific instructions as to what goods were to be carried and where they were to go. Strawbridge could tell DuGross whether he was to leave at five o'clock or work overtime. The trucks carried only goods of Strawbridge. However, a loader employed by ABC was constantly on the plat-

form and instructions to drivers were relayed from Strawbridge through him.

Harold Leadbeater, a managerial employe of Strawbridge, testified in substantial corroboration of Sheddy. He added that the truck bore on its cab, and he believed on its body, the ABC name, but nowhere that of Strawbridge. The drivers wore their own clothes, not Strawbridge uniforms. ABC, he said, did similar hauling as a "contract carrier" for department stores in Philadelphia other than Strawbridge. Strawbridge had one truck of its own, driven by its own employe, used for carrying parcel post packages to the post office. ABC sent managerial personnel to the Strawbridge store every three or four weeks to check on operations.

Reid Huff, a Strawbridge warehouse manager, described the assembling and tagging of packages designated for specific destinations. ABC alone, he said, controlled the hiring and firing of the truckers, their wages and vacations, and the maintenance, repairing and inspecting of trucks. In case of damage to goods in shipment, ABC made an adjustment with Strawbridge. The witness told the drivers what to take and where to take it, but nothing as to speed, routes or operation of trucks. DuGross, however, worked exclusively on Strawbridge hauling.

Finally, ABC produced its vice president and treasurer, Robert M. Taddei. ABC, he said, was licensed by the State Public Utilities Commission as a common carrier, which included the right to operate as a contract carrier. His company (ABC) operated about 180 trucks, operated by and between 135 and 145 drivers and helpers, sometimes more. It had its own main terminal in Philadelphia. He had talked with Sheddy seven or more years ago about furnishing trucks and men to do Strawbridge's hauling. ABC furnished all insurance coverage, including workmen's compensation. Straw-

bridge paid for trucking service on a cost-plus basis, figures on a five-day 40 hour week. ABC supplied similar services to other stores, and to some manufacturers. The trucks and men assigned to Strawbridge were for its exclusive full time use; he described the arrangement for the trucks as a lease. ABC selected its truckmen, without requiring assent from Strawbridge; their pay was fixed by the union; only ABC could discharge a man. If a driver fell ill, he would telephone the ABC terminal and inform the dispatcher, and another driver from the terminal would take over. Strawbridge had no voice in the selection of the replacement. ABC scheduled vacations, negotiated with the union, instructed drivers on safety in driving, what to do in case of accident, and on reporting condition of trucks weekly. ABC attended to servicing and repair of trucks. Except for the right of the "customer" (Strawbridge, for example) to tell the driver what to take and where to take it, the witness said, ABC maintained exclusive control over the operation of its trucks by its drivers. DuGross had been assigned solely to Strawbridge for several years; if Strawbridge found him unsatisfactory, the witness said, he would have removed him from the assignment. Once Strawbridge had complained about an act of Schneider's, and informally against DuGross for permitting it; Taddei had spoken to DuGross about it as "captain of his ship"; that "took care of it the same day" and ended the matter; it never happened again, Taddei said. DuGross had been with ABC 9 or 10 years, had done work for other customers before being assigned to do hauling for Strawbridge, and had a right to request assignment to other jobs.

From Taddei's commendable frankness, and from the testimony of the other witnesses, a clear picture emerges. DuGross was hired, paid, and trained by ABC; he was assigned exclusively to the Strawbridge

hauling job for several years, worked on that job all day, could be told by Strawbridge what to haul and where to haul it, with overtime work if necessary. But only ABC could discharge him, though of course ABC would pay heed to a complaint from its customer, and would reprimand the driver if warranted, or take him off the job and replace him if the customer insisted. Outside of directions as to goods to be hauled and their destinations, and, if necessary, calls for overtime work, all control over the drivers and their trucks remained with ABC.

It is true, as argued by counsel for ABC, that specific factors such as who pays wages may not invariably be decisive in themselves; but despite the excellent argument presented for ABC, the circumstances add up to an exclusive employment by ABC. The crucial test is that of control: Stevens v. Publishers Agency, 170 Pa. Superior Ct. 385 (1952) ; Mature v. Angelo, 373 Pa. 593 (1953). In the former case, cited for ABC, the court found an asserted independent contractor to be actually an employe; in the latter, cited for Strawbridge, a man in the general employ of one person but lent to another along with a vehicle he operated was held to remain the employe of the former. "The crucial test in determining whether a servant furnished by one person to another becomes the employe of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it*," declared former Chief Justice Horace Stern in the latter case, Mature v. Angelo, supra, p. 595, with emphasis on the original.

That case is very similar to the one at bar, and in our judgment governs it. Nothing argued to us impels us to interfere with the decisions of the referee and the board. Nor do the circumstances disclose, as counsel for ABC suggests alternatively, any basis for find-

ing a joint control by two different employers and apportioning liability between them. Control, except for an immaterial right of minor directions by Strawbridge, lay entirely with ABC, and in the eyes of the law ABC was the sole employer of decedent.

In an appeal in a workmen's compensation case the revisory powers of a court of common pleas are limited to a determination of the question whether there was competent evidence to support the findings of fact of the compensation authorities, and whether the law has been properly applied.

We adopt the findings of fact, conclusions of law and award of the referee, and the opinion of the board affirming them; and we reaffirm our order of September 12, 1968, dismissing the appeal of defendant ABC and its insurance carrier (INA), dismissing the appeal of Louise DuGross, claimant, as moot, and affirming the opinion of the Workmen's Compensation Board.