## Rathburn *v.* Sussman Brothers & Company (et al., Appellant.)

Argued April 26, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADFELD, PARKER, JAMES and RHODES, JJ.

*Harvey B. Lutz,* with him *Alfred K. Hettinger* and *Harris C. Arnold,* for appellant.

*Robert E. Haas,* for appellee.

OPINION BY KELLER, P. J., July 15, 1937:

The claimant's husband, Joseph A. Rathburn, was employed by Sussman Brothers & Company, the defendants, as night watchman at a scrap or junk yard con-

ducted by them. The yard contained considerable quantities of machinery, scrap iron and other waste materials.

On November 9, 1934, Rathburn was inside a small shanty on the premises of his employers, in the regular course of his duties as watchman, when three young men, all of whom were armed with guns (revolvers), approached and ordered him out of the shanty. As Rathburn came out of the door of the shanty, he was told to "stick 'em up." Instead of putting up his hands, he started to "rush them" or "pull his own gun,"[1] whereupon one of the young men shot him, and they all ran away, without securing any booty. Rathburn died four days later from the effects of the bullet wound. He identified two of the young men who were with the one who fired the shot, after being told that he was going to die, and they subsequently pleaded guilty and were sentenced to Huntingdon Reformatory.

The second referee who heard the case, after various proceedings, not necessary to be recited here, refused to award compensation, on the ground that the death was the result of an injury caused by a third person directed against the decedent because of reasons personal to him and not as an employee or because of his employment. This was based on certain vague hearsay declarations that the young man who fired the shot knew that Rathburn had that day been paid his weekly wages, $14, and that the object of the hold-up was to get this money; but it was not supported by the weight of the evidence, and on appeal to the board the findings of the referee were set aside and the board adopted and reinstated the findings and award of the referee who had first heard the case, and awarded compensation to the widow. On appeal to the court of common pleas the award was sustained and judgment entered for the

---

[1]According to the different stories of the assailants.

claimant. The insurance carrier has appealed to this court. The judgment will be affirmed.

The evidence clearly establishes that the claimant's husband was killed on the premises of his employer and in the performance of his duties as watchman. When killed he was doing just what he was employed to do, acting to protect the property of his employers, which he had been engaged to watch and defend.

The burden of showing an intention on the part of his assailants to injure the deceased watchman, because of reasons personal to himself and not directed against him as an employee or because of his employment, under Article III, sec. 301 of the Workmen's Compensation Act, was on the defendants (*O'Rourke v. O'Rourke*, 278 Pa. 52, 122 A. 172; *Keyes v. New York, O. & W. Ry. Co.*, 265 Pa. 105, 108 A. 406; *Meucci v. Gallatin Coal Co.*, 279 Pa. 184, 123 A. 766) and they wholly failed to meet the burden.

The young men went to the defendants' yard to execute a hold-up, that is, to rob. There was no competent evidence that they intended only to rob the watchman of his pay; but even if they had, that would not have taken the employee out of the protection of the Act. They went there to rob, not to gratify or indulge any personal animosity against the deceased. Robbers and hold-up men war on society at large, but, except in rare instances, they have no personal animosity against the individual victim. The robbery is not done because of personal enmity to the person robbed. They are out after money, and they do not care where they get it. There is no personal ill feeling about it directed against the individual robbed, as distinguished from society as a whole. Even if the thought of robbing the watchman, himself, was uppermost in the minds of the three who attacked him, there was nothing in the encounter to lead Rathburn to believe that an attack upon him for personal reasons was intended, or anything other than

an attempt to rob the premises which he was employed to protect. Their outcry had in it no element of personal animosity — "stick 'em up" could mean only an attempt to rob or injure the property he was employed to defend.

The provision in section 301 of the Act that "The term 'injury by an accident in the course of his employment' ...... shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment," refers to an assault or attack by a third person — that is, by a person other than the employer — because of personal enmity or animosity against the employee, or to avenge some wrong or grievance personal to him, not arising out of or because of his employment. This is recognized in the following decisions, inter alia, construing the clause: *O'Rourke v. O'Rourke,* supra, where Mr. Justice FRAZER, afterwards Chief Justice, used the expressions "to avenge a wrongful act, or for a grievance personal to him" (p. 54), "personal animosity" (pp. 55, 56), "personal enmity" (p. 56); *Curran v. Vang Const. Co.,* 286 Pa. 245, 250, 133 A. 261, (WALLING, J.). where the phrase "personal ill will" was used; *Cronin v. American Oil Co.,* 298 Pa. 336, 342, 148 A. 476, (SADLER, J.), where the term "personal enmity" was employed; *Meucci v. Gallatin Coal Co.,* 279 Pa. 184, 186, 123 A. 766, (SADLER, J.) "an assault, the result of enmity existing between those engaged, apart from the service;" *Kline v. Penna. R. Co.,* 101 Pa. Superior Ct. 539, 545, (LINN, J.), "whether or not there was such personal animosity, as is excepted by the statute, is a question of fact;" *Sinko v. Bethlehem Steel Co.,* 104 Pa. Superior Ct. 357, 362, 363, 159 A. 230, (STADTFELD, J.) "personal malice," "personal enmity," "personal animosity."

Of the cases cited and relied on by the appellants,

some of them related to injuries which were clearly the result of a quarrel arising from personal enmity or animosity;[2] in some, the injured employee was himself the aggressor in a felonious attack, the result of a private quarrel or personal feud;[3] in others, the attack occurred off the premises of the employer, when the employee had quit work and was on his way home, and was no longer in the course of his employment or furthering the interests of his employer.[4]

In the case of *Cronin v. American Oil Co.,* 298 Pa. 336, 148 A. 476, chiefly relied on by appellants, where the claimant was injured in a hold-up, compensation was refused because the hold-up occurred after the employee's work was done and he had gone ten or eleven blocks on his way home, and when he was no longer in the course of his employment or furthering the interests of his employer. The court said, speaking through Mr. Justice SADLER: "There was no evidence that the highwaymen were aware that Cronin was an employee of defendant, that he was accustomed to carry cash of the oil company, [although a safe was maintained on the employer's premises for its safe keeping], or that he was waylaid by reason thereof. The money of defendant, [$1.85] which he had in his possession, was seized, but not that personally belonging to him. Others arrived at the scene, and the assailants fled ...... Though the defendant, upon whom the burden of proof rested, failed to show affirmatively that the injury was inflicted as a result of personal enmity toward the one assaulted, thus excusing the employer (*McDevitt v. Checker Cab Co.,* 288 Pa. 394; *Meucci v. Gallatin Coal*

---

[2] *Cawley v. American Ry. Exp. Co.,* 276 Pa. 160, 120 A. 108; *McDevitt v. Checker Cab Co.,* 288 Pa. 394, 396, 136 A. 230.

[3] *Curran v. Vang Const. Co.,* 286 Pa. 245, 133 A. 261; *McDevitt v. Checker Cab Co.,* 288 Pa. 394, 397, 136 A. 230.

[4] *Cronin v. American Oil Co.,* 298 Pa. 336, 148 A. 476; *Maguire v. James Lees & Sons Co.,* 273 Pa. 85, 116 A. 679.

Co., 279 Pa. 184; *Cawley v. American Ry. Express Co.*, 276 Pa. 160; *Maguire v. Lees & Sons Co.*, supra), yet the evidence does disclose *that the robbery had no relation to the employment of the deceased, and that he was not, at the time, in the course of his regular service. The hold-up was unconnected with the allotted duty of Cronin.* His presence on the street after midnight, occasioned by his hours of service, gave convenient opportunity for its commission, but his employment was not the cause of the wrongful act. At the time of the injury he was no longer engaged in furtherance of the master's business." (Italics supplied)

There is nothing in the opinion in that case which supports the position that if that hold-up had occurred on the employer's premises, in the course of claimant's employment, he would not have been entitled to compensation, even if no money had been taken from him but his own. The extract last quoted is to the contrary.

It is well known that junk yards are peculiarly subject to theft and pilferage and the employment of Rathburn as watchman was to protect the property against just such depredations. That he lost his life while doing his 'allotted duty' entitles his dependents to compensation.

Judgment affirmed.