Podgur *v.* Otto Eisenlohr & Bros., Inc. et al.,
Appellants.

Argued March 14, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Frank R. Ambler,* for appellant.

*Nathan L. Posner,* for appellee.

OPINION BY RHODES, J., April 21, 1939:

Claimant, on behalf of herself and three minor children, filed a claim petition for compensation for the death of her husband who was a salesman for defendant employer. The petition set forth that deceased died on December 14, 1937, as the result of an accident occurring in the course of his employment. In its answer defendant employer denied this averment. Before the referee claimant established that deceased died of carbon monoxide poison, on December 14, 1937, on the premises of defendant employer, and while engaged upon the business of his employer. Witnesses called by defendant and its insurance carrier also testified that deceased was on his employer's premises when found at a place he was permitted and required to be in the performance of his duties. A truck was furnished deceased, which he used in the sale and delivery of cigars and tobacco for defendant employer. He was not limited to any hours, and he often worked in the evening, after the usual working hours. The defense was that deceased committed suicide. The referee found as follows:

"3. That on December 14, 1937, the claimant's decedent, while working in the employ of the defendant met with an accident wherein he was overcome by carbon monoxide gas in the garage of his employer, wherein the car of his employer that he used in his duties was stored.

"6. The defense in this case is, that the decedent committed suicide, and the referee is convinced and finds as a fact from the preponderance of the evidence, that the decedent met with an accident which caused his death and that he did not commit suicide; that the decedent's death was accidental and not brought about by suicide."

The board affirmed the referee's findings of fact, conclusions of law, and award of compensation. Defendant and its insurance carrier appealed to the court of com-

mon pleas, which sustained the award and entered judgment thereon; they have appealed.

We think that the legal principles stated by this court in *Franks v. Point Marion Bridge Co.*, 128 Pa. Superior Ct. 269, 193 A. 421, are applicable here, and need not be again repeated in their entirety. Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by Act of June 4, 1937, P. L. 1552, §1, 77 PS §431, provides "that no compensation shall be paid when the injury or death is intentionally self inflicted, but the burden of proof of such fact shall be upon the employer." [1] Appellants concede that there is no direct evidence in the instant case, and that the result depends upon the inferences to be drawn from circumstantial evidence alone. But appellants contend that "all that is required of the party who has the burden is that the fact for which he contends shall be a reasonable inference from the facts established by circumstantial evidence." Appellants in their argument fail to recognize that if the facts proved permit of an inference of accidental death as well as an inference of suicide the inference to be adopted is for the compensation authorities and not for the court. Consequently, the findings of the compensation authorities based on such inference must be sustained unless it appears that the inevitable conclusion from the facts presented was that the deceased had committed suicide. *Franks v. Point Marion Bridge Co.*, supra, p. 277. Here the facts and circumstances support a reasonable and legitimate inference of accidental death; such inference was fairly deducible from the proved facts. See *Paulin v. Williams & Co., Inc. et al.*, 122 Pa. Superior Ct. 462, 186 A. 415, affirmed 327 Pa. 579, 195 A. 40. See, also, *Tappato et al. v. Teplick & Eisenberg Co. et al.*, 133 Pa. Superior Ct. 231, 2 A. 2d 545. Deceased, as a salesman for defendant employer, used the truck

---

[1] The amendment by Act of 1937, effective January 1, 1938, relates to phraseology.

which was furnished to him, and which was stored, together with other trucks of the employer, in the private garage adjoining and connected with its warehouse and stockroom from which the salesmen replenished their stocks. There was no attendant at the garage at night, and each salesman had a key to the garage so that he could return his truck or take it out at any time. On December 13, 1937, deceased came home in his delivery truck about 6 p. m.; dined with his family; talked to his children, and helped them with their homework; and left in his truck about 7:30 p. m., saying that he had some customers to see, as he frequently did at night during the Christmas season, and was then going to take a Turkish bath as he had a cold. There is no evidence as to what he actually did thereafter. He was found dead in the garage of his employer about 7:30 a. m. the following morning by a fellow employee, Mr. Facchian, who was the first to arrive. It is undisputed that the cause of death was carbon monoxide asphyxia. Deceased was lying on his back on the floor of the garage at the rear of his own truck, which was 30 feet from the entrance and 25 feet from Facchian's truck which he had placed on the right-hand side next to the door at about 5:30 p. m. on December 13th. The garage was blue with smoke, and it was testified that the engine of Facchian's truck was running. Deceased was wearing his suit and overcoat, which were not disarranged, and his hat was on the seat of his own truck. There were no marks or injuries on the body. There was testimony by one of appellant's witnesses that the drivers "look at the stock in the evening for their next stops or what they have to do, and that is only natural that his hat would be lying in the car."

Facchian testified that when he parked his car at 5:30 p. m. on the previous evening he had turned off his motor; that the gasoline tank was then two-thirds full; that there was "not much" in it in the morning. Fac-

chian also testified that when he arrived on the morning
of December 14th he found the garage door locked, and
that when he opened it the engine of his truck was run-
ning. After testifying that notice had been sent to the
police of his discovery, Facchian also testified: "Q. Did
you two go in the garage then? A. No. Mr. Christen-
son went in first. He opened the door and walked in
there and identified the man. So when he came out I
went in with him and I identified him." The testimony
of Facchian that he found the garage door locked and
then unlocked it is difficult to reconcile with that of A.
Christenson, appellants' witness, who had charge of the
building and stock. Christenson testified: "Q. And when
you got there what conditions did you find? A. Well as
I was driving up to the place I saw Mr. Facchian back-
ing from the door and I thought there was something
unusual, and then when I got out of the car he told me
'there is a man lying in there,' and in the meantime I
had walked across the street to open the office door and
I went into the office and threw the Holmes Electric
off, and then I went out and he told me there was a man
laying in there, so then I opened the front door, it was
evidently locked—Mr. Facchian had evidently locked it,
because I had to unlock it again, and I went in there
and it was all blue with smoke. So I went in a couple
of steps and then I retraced my steps and threw the
bolt off and opened the big door so that I would not
probably get any effects of the fumes, and I went back
and saw a form lying there on the floor, which I identified
as Mr. Podgur."

It is just as reasonable to infer that Facchian, un-
knowingly and unintentionally, left the motor of his
engine running, and that deceased was overcome by the
carbon monoxide fumes before he discovered their pres-
ence, after entering the garage with his truck, as that
deceased went to Facchian's truck, started its engine,
locked the garage door, then went 25 feet away in the

large garage, lay down on his back, and arranged himself to meet death, as appellants argue. Apparently there were several doors to the garage, and Facchian's testimony as to finding the particular garage door locked is open to question.

The circumstances of death were as consistent with an accident as with suicide, if not more so.

There was evidence that deceased was short about $800 in his accounts with his employer. On the other hand, the testimony disclosed no motive for the deceased to commit suicide, nor is there anything to indicate that he ever intended or planned to do so.

The evidence supports the findings of fact of the compensation authorities, and the findings warrant the conclusion that deceased was accidentally killed in the course of his employment.

Judgment is affirmed.