Hunter *v.* American Oil Company et al.,
Appellants.

Argued April 10, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Paul E. Hutchinson,* with him *John C. Sherriff,* of *Sherriff, Lindsay, Weis & Hutchinson,* for appellants.

*Fred J. Jordan,* with him *Murray J. Jordan,* for appellee.

Opinion by Rhodes, J., July 13, 1939:

The referee in this workmen's compensation case awarded compensation to claimant and her minor son for the death of her husband, Clyde O. Hunter, on April 24, 1933. On appeal the Workmen's Compensation Board affirmed the referee's findings of fact, conclusions of law, and award. Defendant employer and insurance carrier appealed to the court of common pleas. Their exceptions to the action of the board were dismissed by that court, the award affirmed, and judgment entered thereon. Defendants have appealed to this court, and two questions are involved: (1) Was deceased in the course of his employment at the time of his death? (2) Was his death the result of an accident?

The referee and the board, on the facts found, concluded that deceased sustained accidental injuries in the course of his employment with defendant employer, which resulted in his death. Defendants, in the answer to claimant's claim petition denied "(a) that the deceased employee sustained fatal injuries while in the course of his employment; (b) that the deceased employee met with an accident while in the course of his employment"; and averred therein that "(a) the deceased employee was not in the course of his employment at the time of his death; (b) the deceased employee sustained wilfully self-inflicted injuries which resulted in his death."

Defendants now contend that the judgment entered on the award must be reversed because (a) claimant failed to show, either by direct or circumstantial evidence, that deceased met with an accident; and (b) because deceased was not in the course of his employment at the time of the alleged accident.

A brief review of the evidence is sufficient to demonstrate that deceased was in the course of his employment with defendant employer at the time the occurrence took place which resulted in his death on the morning of April 24, 1933.

It was stipulated by the parties at the hearing before the referee that deceased was in the employ of the American Oil Company, defendant employer, on April 24, 1933, as a collector, and that about 9:30 a. m., April 25, 1933, the dead body of deceased was removed from the Allegheny River at a point about 675 feet down stream from the Thirty-first Street bridge, in Pittsburgh, in the middle of the river. The referee so found, and the board affirmed the findings.

Deceased had been employed for a number of years prior to April 24, 1933, by defendant employer as a supervisor and as a collector. He supervised a number of stations of defendant employer, and was responsible for the conduct and condition of those stations, and for the conduct of the men in charge. In the performance of his duties he was furnished with an automobile; gas and oil were also included. This was a part of his contract of hire, and he was using the automobile of defendant employer on the morning of April 24th. On the morning in question deceased left his home for his place of employment about 7 a. m., in good spirits. He went directly to defendant employer's plant at Fifth and Hamilton Avenues, in Pittsburgh, where he reported each morning. There he obtained the automobile owned by defendant employer and used by him in his work. Each day he was required to make collections from the various stations; and for this purpose he usually started out about 11 a. m. On the morning of the 24th, after having reported as required, he obtained, about 8 o'clock a. m., one Thomas Moran, a fellow employee, and drove him to the Hamilton Avenue garage in connection with some work to be performed for defendant employer. On the Saturday previous to April 24, he told his superior that he was to appear in the criminal court at Pittsburgh on that day to testify at the trial of one King by whom deceased had been held up and robbed at the Ross Avenue gas station, on December 25, 1932, while in the course of his em-

ployment with defendant employer. He subsequently identified King as a participant in the holdup. He was directed by his superior to be there in accordance with his subpoena, and if he was out in time he could make his collections. At about 10 a. m. on the 24th the automobile which deceased was driving that morning was found in the Thirty-first Street bridge over the Allegheny River headed toward downtown Pittsburgh where the criminal court building is located.

Counsel for defendants argue that deceased was engaged in an errand foreign to his employment at the time of the alleged accident. The fact that deceased had been subpoenaed to appear in court in connection with the prosecution of King did not nullify the mandate of his superior that he be in court at the time specified to testify at the trial. In this connection counsel for defendants also emphasize that deceased did not proceed by the usual or ordinary route to go to the courthouse located in downtown Pittsburgh and on the same side of the Allegheny River as is the defendant employer's Hamilton Avenue plant; that deceased apparently crossed the Allegheny River to the north side of Pittsburgh. We do not think that the choice of routes has in this case any material bearing on the question whether deceased was in the course of his employment at the time of the alleged accidental death. The testimony of deceased's superior is significant in this connection: "Q. The American Oil Company has stations in the Northside, too? A. Yes. ......
Q. Mr. Hunter did not ask you every time he went out, specifically where he had to go? A. No. Q. He was on his own? A. Yes, more or less, unless he was given something specific to do. ...... Q. He may have received some call to go to Northside? A. He didn't receive it from me. Q. Within the course of his employment, he could have received another call? A. Yes. Q. What position do you hold with the American Oil Company? A. Superintendent of Service stations at that time."

By admission of the parties and the finding of the compensation authorities deceased was in the employ of defendant employer on April 24th. On that morning he started out in furtherance of his employer's business as the referee and board described in their findings. His trip to downtown Pittsburgh to attend court was merely one of the duties which he was to perform that day, and this he was specifically directed to do. It was recognized as being an incident in the day's work. It was not an abandonment of his employment, nor was he engaging in private affairs disconnected therewith. See *Zenker v. Zenker et al.*, 93 Pa. Superior Ct. 255, 258. Deceased's intended appearance in court on the morning of the 24th, at the direction of defendant employer, cannot be said to bear no relation to his employer's business and to have been an errand foreign to deceased's employment. We find nothing in the record to indicate that deceased did anything to take himself out of the course of his employment after he reported for work on the morning of the 24th, unless by his conduct he intentionally brought about his own destruction. "It has been frequently held that where an employee started out on the business of his employer and was later fatally injured, the presumption is raised that he was engaged in the furtherance of his employer's business at the time of the accident. See *Kolasa v. Stubnickie et al.*, 110 Pa. Superior Ct. 152, 167 A. 246. The presumption may be rebutted; and whether the presumption is rebutted is for the referee or the board, unless the evidence to the contrary is clear, positive, credible, and either uncontradicted or so indisputable in weight and amount as to justify the court in holding that a finding against it must be set aside as a matter of law. *Ford v. A. E. Dick Co.*, supra, 288 Pa. 140, 146, 147, 135 A. 903, 906": *Paulin v. Williams & Company, Inc., et al.*, 122 Pa. Superior Ct. 462, at page 467, 186 A. 415, at page 417, affirmed 327 Pa. 579, 195 A. 40.

Was deceased's death accidental on the morning of

April 24, 1933? It appears that deceased's body was found 675 feet down the river from the Thirty-first Street bridge about 9:30 on the morning of the 25th. The automobile which he was driving was found on the Thirty-first Street bridge, headed toward downtown Pittsburgh, at about 10 a. m. on the 24th. At about 9 a. m. deceased left the Hamilton Avenue garage of defendant employer, which is located on the south side of the Allegheny River. Here he left Moran, a fellow employee, whom he had picked up at the north side plant of defendant employer. No witness was produced who was able to testify how deceased got in the Allegheny River. A witness for defendants testified that he saw a car on the bridge facing Pittsburgh, and saw a man step out of the car, go to the railing and look down at the water. Subsequently he saw a man come up out of the water struggling; he swam for about 200 feet, turned over and floated down the river about 600 feet, and sank. This witness also testified: "A. He was going down in the middle of the stream. Q. He tried to swim out of the river, didn't he? A. Yes, he was swimming." He was unable to say whether there were any other men on the bridge, although he did not see any one on the downstream side. Leo Wright, a witness for defendants, who also saw the man in the river going down stream, testified: "Q. Did you notice anything with respect to that car later? A. No, sir; only a man came across the bridge and stopped and looked at something in the car; picked up something and put it back."

When recovered the body of deceased had a mark about the size of a silver half dollar above the origin of the nose.

Clarence Johns, a witness called by defendants, testified that he was driving across the Thirty-first Street bridge about 10:30 a. m. on the 24th, and noticed a large crowd of people standing on the bridge. He stopped and looked in an automobile parked along the

curb. He testified that he found a note in the pocket of an overcoat which was in the car, and that he turned this note over to a "plain clothes man." This witness knew a Clyde O. Hunter, and worked for the same company that Hunter did, although he stated that he did not know whether deceased was the same Clyde O. Hunter that he knew. Thomas F. Coyne, a police officer, was called by defendants, and testified that he investigated the car standing on the bridge, and found letters therein indicating that it belonged to the American Oil Company, defendant employer, and "also found a note on the front seat of the car," which he turned over to his superior. The note was offered in evidence, and read in part as follows: "Anna take care of our Billy boy, you are in no fault of this act I have done Suicide Clyde." Most of the testimony introduced by defendants related to this note. The parties agreed that an impartial handwriting expert be appointed. M. A. Nernberg, a member of the Allegheny County Bar and a handwriting expert, was selected. He concluded that the note was not in the handwriting of deceased, and his testimony to substantiate this conclusion was very persuasive.

It is true that there is no direct evidence as to the manner in which deceased may have reached the water from the bridge; but the act which resulted in his death must have been either voluntary or involuntary. There was no circumstance tending to show a natural death. If involuntary, he either fell off the bridge as the result of a mishap, or was thrown or forced off by some third party; in either event, under all of the facts in this case, the death would be compensable. We think it may be properly inferred from the testimony that deceased was seen swimming for at least 200 feet in the middle of the river; that he was unable to save himself, and finally sank. It was not necessary for claimant to show just how deceased happened to be in the river, for, if the death was accidental, it was

not incumbent upon claimant to show the exact nature of the accident or just how it occurred. *Zelazny v. Seneca Coal Mining Co. et al.,* 275 Pa. 397, 119 A. 487. Although no one saw deceased fall from the bridge to the water where he was subsequently seen, the circumstantial evidence, in our judgment, was sufficient to sustain the finding of an accident, and that the accidental death happened in the course of his employment. It need not grow out of the employment.

The evidence tending to show suicide is negligible. Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §431, provides "that no compensation shall be made when the injury or death be intentionally self inflicted, but the burden of proof of such fact shall be upon the employer." It having been established that the suicide note was not in the handwriting of deceased, the finding that deceased's death was accidental is materially supported. The testimony does not show any motive for deceased to have committed suicide; nor does it indicate that deceased ever planned self destruction. The inference as to the manner of deceased's death was for the compensation authorities to draw from the facts and circumstances of the case; the evidence does not conclusively show suicide; and the award in claimant's favor does not entirely lack evidential support. See *Franks v. Point Marion Bridge Co.,* 128 Pa. Superior Ct. 269, 277, 193 A. 421. In the absence of planned self destruction, the only legitimate inferences from the facts and circumstances are that deceased met his death by falling off the bridge as the result of a mishap or fortuitous happening or an untoward event which was not expected or designed, or that he was forced or shoved off by some third party. In the latter event the burden of proof was on defendants to establish that this was the "act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment": Section

301, Act of June 2, 1915, P. L. 736, 77 PS §411. See *O'Rourke v. O'Rourke et al.*, 278 Pa. 52, 55, 122 A. 172; *Keyes et al. v. New York, Ontario & Western Ry. Co.*, 265 Pa. 105, 108 A. 406; *Rathburn v. Sussman Brothers & Co. et al.*, 127 Pa. Superior Ct. 104, 107, 193 A. 488. There is no evidence whatsoever to this effect.

It is to be borne in mind that compensation cases of the type now before us are not controlled by cases arising under insurance contracts where it is provided that the death of the insured must have been effected solely through external, violent, and accidental means. Although in such cases the defense of death by suicide is an affirmative defense and the burden of such proof is upon the defendant *(Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 508, 173 A. 644; *Ligouri v. Supreme Forest Woodmen Circle*, 318 Pa. 424, 426, 178 A. 398), nevertheless, the plaintiff has the burden of proving by competent evidence that the insured's death was caused by external, violent, and accidental means, and that it resulted solely from such means *(Lubowicki v. Metropolitan Life Ins. Co.*, 114 Pa. Superior Ct. 596, 599, 174 A. 649, 650). Besides, in the latter type of cases the plaintiff has the burden of proving the operative facts by a fair preponderance of the evidence, and an even balancing of the evidence on the issue of death by accidental means, or death by suicide, denotes that the plaintiff has failed to sustain his or her burden of proof *(Watkins v. Prudential Insurance Co.*, supra, p. 512). But in workmen's compensation cases where the burden of proof that the injury or death was intentionally self inflicted is upon the employer, if the facts proved permit of an inference of accidental death as well as an inference of suicide, the inference to be adopted is for the compensation authorities. Consequently, the findings of the compensation authorities based on such inferences must be sustained unless it appears that the inevitable conclusion from the facts presented was that the deceased had committed suicide.

*Podgur et al. v. Otto Eisenlohr & Bros., Inc., et al.,* 135 Pa. Superior Ct. 469, 5 A. 2d 603.

We recognize that the evidence does not show the precise nature of the accident (see *Watkins v. Pittsburgh Coal Co.,* 278 Pa. 463, 466, 123 A. 461) ; but, although circumstantial, it would seem to clearly and logically indicate that deceased's death was accidental (see *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 410, 3 A. 2d 377, reversing 131 Pa. Superior Ct. 72, 198 A. 451). When due weight is given to the fact that the suicide note was not, according to the evidence, in the handwriting of deceased, and this is considered together with the other proven facts, there is ample competent evidence to sustain the finding and conclusion of the compensation authorities that deceased met his death accidentally while in the course of his employment with defendant employer.

Judgment is affirmed.