Brecker, Appellant, *v.* Philadelphia and Reading Coal and Iron Company.

Argued October 23, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Roger J. Dever,* for appellant.

*Penrose Hertzler,* with him *J. A. Welsh,* and *E. Mac Troutman,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1940:

It is conceded in this workmen's compensation case

422

that appellant's husband, William Brecker, a miner, was killed by an explosion of dynamite on June 19, 1934, during the course of his employment in one of the mines of the defendant company.

The sole defense relied upon before the compensation authorities was that his death was "intentionally self-inflicted" and therefore not compensable under the provision of Section 301 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §431, reading: "No compensation shall be made when the injury or death be intentionally self-inflicted; but the burden of proof of such fact shall be upon the employer."

The proceedings before the compensation authorities need not be recited in detail. A disallowance of compensation to the claimant widow was entered by the referee upon the ground that her husband's death was not accidental but intentionally self-inflicted. A majority of the board (Chairman ULLMAN dissenting) reversed the action of the referee, set aside his findings, made findings of its own to the effect that the defendant had not successfully overthrown the presumption against suicide, and entered an award. Upon the defendant's appeal to the common pleas, the record was remanded to the board because it had imposed upon the employer an erroneous measure of proof. In a subsequent opinion a majority of the board (Chairman Ullman again dissenting) stated it had "re-examined the entire record and weighed the testimony in accordance with the standards of proof indicated by the opinion of the Court of Common Pleas of Northumberland County" and was still of opinion that claimant was entitled to an award.

The findings upon which the award was based read:

"6. That the death of William Brecker was caused by an explosion of unknown origin while he was in the course of his employment with the defendant company on June 19, 1934.

"8. That the defendant has failed to establish by a

preponderance of the evidence its contention that the death of William Brecker resulted from suicide or self-destruction."

The majority of the board, in the course of its opinion, thus amplified the above findings: "...... the case is presented of an employee whose dead body is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death, which probably occurred during the usual working hours of the decedent, and the inference may fairly be drawn that death resulted from accidental injuries, for a preponderance of the testimony justifies the finding that the decedent's death did not result from suicide or self-destruction."

The reference is, of course, to the proposition announced by our Supreme Court in *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192, but it omits these material qualifications of the principle there laid down. It was expressly stated that the rule applies only "where no facts appear indicating anything to the contrary," and where there are "circumstances fairly indicating an accidental death."

Upon the employer's second appeal to the court below, that tribunal, in an opinion by CUMMINGS, J., after reviewing the testimony, concluded as a matter of law that "the facts and circumstances here presented do not permit of an inference of accidental death ...... the inevitable conclusion is that Brecker committed suicide ...... no other consistent conclusion could be arrived at."

In effect, it was held that if a jury had rendered a verdict of accidental death it would have been the duty of the trial court to set it aside. The exceptions of the defendant company were accordingly sustained and the present appeal is by the claimant from the judgment thus entered in favor of the defendant.

The question of law with which we are now confronted is whether the court below erred in holding, under all

the evidence, that the employer successfully carried its statutory burden of rebutting the legal presumption against suicide.

In approaching the disposition of this question it is important to have in mind the kind of evidence which will justify a court in setting aside the findings of the compensation authorities in this case. There were no eye witnesses to the occurrence and the case must be decided one way or the other by a consideration of the circumstantial evidence appearing upon the record. The kind of evidence which must appear of record before a court may reverse the findings of the board upon the present issue was clearly defined in *Ford v. Dick Co.,* 288 Pa. 140, 135 A. 903, at page 146: " 'Whether the presumption is rebutted is for [the triers of the facts] unless the evidence to the contrary is clear, positive, credible and either uncontradicted or so indisputable in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law.' "

In reversing the court below in that case because it had undertaken to weigh conflicting evidence and draw its own inference of suicide, the opinion continued: "Here, it cannot be said as a matter of law that the award in plaintiff's favor entirely lacks evidential support; no more can it be held that the evidence relied on by the other side is 'so clear, positive, credible, and uncontradicted,' or so 'indisputable in weight' as to justify the court below in holding that the employer had sustained the burden put on it, and, on this theory, to warrant it in setting aside the findings of the compensation authorities that defendant had not proved the injury which caused Ford's death to be intentionally self-inflicted, or in refusing to abide by the accompanying finding that deceased 'met with an accidental injury while in the course of his employment, by which he sustained a lacerated larynx that contributed to his death,' which second finding, under the circumstances

of this case, logically followed the first one. ......
When findings of fact have been made, only questions
of law connected therewith can be ruled upon by the
courts. The court below had the right and duty to
apply the standard hereinbefore stated, and thus to
pass on questions of law connected with the burden of
proof, also to determine whether there was any evi-
dence upon the record to support the findings of fact
in claimant's favor,—...... but it lacked power to go
further and substitute its own findings according to
what it conceived to be the weight of the evidence."

In brief, the rule is definitely established that where,
as here, the compensation authorities have made a find-
ing of accidental death such finding must stand "un-
less the evidence to the contrary is clear, positive and
credible and either uncontradicted or so indisputable
in weight and amount as to justify the court in holding
that a verdict against it must be set aside as a matter
of law."

We have consistently followed that rule in *Tuttle v.
Holland Furnace Co.*, 111 Pa. Superior Ct. 290, 169 A.
462; *Franks v. Point Marion Bridge Co.*, 128 Pa. Su-
perior Ct. 269, 193 A. 421; *Podgur v. Otto Eisenlohr
& Bros. Inc., et al.*, 135 Pa. Superior Ct. 469, 5 A. 2d 603;
and *Hunter v. American Oil Co. et al.*, 136 Pa. Superior
Ct. 563, 7 A. 2d 479.

In order to determine upon which side of the line
the present case falls, a somewhat detailed review of the
evidence is necessary. There is practically no contra-
diction or controversy in the evidence concerning the
facts and surrounding circumstances of the death of
the employee. Anthony Rogtski was Brecker's "buddy"
and had worked with him steadily for a period of about
nine years prior to June 19, 1934, the date of the fatal
occurrence. On that day he and the deceased went to
work about two o'clock in the afternoon. The only
conversation between them as they were lowered into
the mine related to a Firemen's Convention to be held

426

the next two days in Mt. Carmel; both asked, and were given, permission to attend it.

Assistant foreman, Ray Minnick, told Brecker and Rogtski to clean up a certain gangway. This work consisted of picking up loose timbers and debris, cleaning out the ditch along the side of the gangway, throwing out the loose material and allowing it to dry, etc. It did not, in the ordinary course of affairs, contemplate the use of any blasting materials, nor were either of these miners assigned any other duties for that day.

Rogtski immediately entered the gangway and started to clean the ditch by throwing out rubbish, etc. When he had worked out about half way from the face of the gangway to the "gangway box," or a distance estimated by him as about one hundred feet, he met Brecker coming in. As Brecker passed Rogtski, the latter said to him: "I am going to clean the gangway"; Brecker said, "Any stuff on the side?" to which Rogtski replied, "No". Brecker kept on walking into the gangway.

Five or ten minutes later Rogtski heard a shot; he called, and, receiving no answer, summoned two other miners who were near at hand. All three entered the gangway which was filled with smoke and, in the language of Rogtski, found Brecker's body "sitting down on a piece of timber with his head blowed off" and "his battery between his legs." His hands were resting on his knees; no part of his head was found.

Two pieces of exploder or steel wire, originally four feet long, were attached directly to the terminals of the battery, with the other ends hanging loose—the remnant of one wire being two feet, and the other one foot and eight inches, in length. The inside foreman of the shaft section stated he found a broken piece of dynamite, three inches in length, in the dynamite box— the usual length being eight inches. In his opinion a five inch piece could be placed inside a hat or cap, but a full stick could not.

Several witnesses for defendant, including the Safety

Inspector each familiar with blasting methods employed in mining, testified to the usual and only proper way to explode dynamite without danger of death or serious bodily injury. The court thus accurately summarized their testimony in its opinion:

"The established way to fire a shot is to attach the battery to the [copper] firing line, from one to two hundred feet away from where the explosion is to take place; at the other end of the firing line and near where the explosion is to take place, the [steel] exploder wires are attached to the firing line and [their other] ends wrapped around the dynamite itself. A brake, which is always in the firing line, is open until after the connection of the exploder wires with the dynamite. The miner, after connecting the exploder wires with the dynamite and firing line, moves back toward the battery, located from one hundred to two hundred feet from where the explosion is to take place, and about midway throws a switch connecting the brake. He then goes to the battery at the extreme end of the firing line, from where the explosion takes place, [shouts a warning and] turns the handle of the battery, causing the explosion."

These same witnesses expressed the opinion that it would be impossible to explode a charge of dynamite by connecting the two exploder wires, not over four feet long, directly to the battery terminals, without causing death or serious injury to the operator. Decedent and his buddy were miners of over nine years' experience, both accustomed to the proper method of handling and exploding dynamite.

There was a standard firing line located in this gangway but there was no indication that it had been arranged, or used, for a shot. It was intact, except that "it had been broken over where the man had been sitting." Brecker's body was found some forty-six feet from the firing station and fifty feet from the face of the gangway. The storage place for the dynamite was three hundred feet from the gangway, and the location

of the battery when not in use was at the far end of the firing line where "it is hung on the side away from the wires."

There was no electric power in the section of the mine where the explosion took place—the nearest electric current being approximately half a mile distant and through rock. In the opinion of defendant's explosive engineer electricity could not cause an explosion such as took place without the use of a blasting cap and the explosion could not be attributed to "stray" electricity. This witness also expressed the opinion that death had been caused by approximately half a cartridge placed at the back of decedent's head.

In addition to evidence of the circumstances surrounding the explosion itself, defendant introduced some testimony for the purpose of showing a possible motive for suicide. In substance, it was that on the night of June 4, 1934, decedent was beaten and driven from his home as the result of a violent quarrel with his wife and her sister. After searching several hours his older brother and a nephew found him sitting on a rock among the strippings, his face cut on the right cheek and blood on each hand. He was persuaded to go to his sister's where he lived for the next two weeks. Just before returning to his home (three days before the accident) decedent declared to his brother and nephew, "Well, I am tired of everything. I am going to do something will make both parties cry and be sorry."

The superintendent of the colliery first learned of decedent's family troubles when the latter's nephew asked him for police protection for his uncle in going to work.

It is suggested in behalf of claimant that there was a small piece of rock "at the face" which might have required the use of dynamite. Defendant's superintendent stated, however, there was no occasion to use dynamite; that the rock could readily have been broken with a sledge, and that the use of dynamite would have been destructive to the work already performed. Re-

liance is also placed by claimant upon the fact that Brecker and his "buddy" asked their immediate superior for two days off to attend the Firemen's Convention, and that decedent then appeared to be in a happy frame of mind. These circumstances, however, are of little weight compared with the evidence pointing to suicide.

In the opinion of a majority of the members of this court, this record contains no evidence supporting a finding that the employee's death was accidental, but it does contain clear, positive, credible and uncontradicted evidence from which the only permissible conclusion is suicide, i. e., that, as contended by defendant, Brecker deliberately carried a battery, a stick of dynamite and two exploder wires, into a gangway where there was no occasion to use them, sat down on a timber, placed the battery between his feet, broke off a piece of dynamite, connected the wires with it, placed it under his cap, attached the other ends of the wires directly to the battery, and operated it with the inevitable result.

As indicated by Chairman Ullman in his dissenting opinion, and by the court below, no tenable theory has been advanced which can explain the uncontroverted circumstances surrounding the death of this employee upon the ground of accident.

The only conflict we find in the evidence relates to the question whether Brecker was really planning to go to the Firemen's Convention the following day, or, by reason of his domestic difficulties, had determined to carry the threat which has been referred to into execution. No finding was made by the board upon the subject, nor, in view of the quality, quantity and weight of the uncontradicted evidence upon the record, do we consider it a material issue.

The conclusion of a majority of our members is that the court below was justified in holding the presumption against suicide had been rebutted by evidence so clear, positive, credible and uncontradicted that it became its duty to so declare as a matter of law. It

follows that the assignments of error to the sustaining of the defendant employer's exceptions, the setting aside of the award, and the entering of judgment in its favor, must be overruled.

Judgment affirmed.