# Wellinger *v.* Brackenridge Borough et al., Appellants.

Argued April 29, 1942.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY,
JJ.

*S. H. Torchia*, with him *Ralph H. Behney* and *Claude T. Reno*, Attorney General, for appellants.

*Ralph C. Davis,* with him *Harry V. Bair,* for appellee.

OPINION BY CUNNINGHAM, J., July 23, 1942:

The judgment in this workmen's compensation case, entered by the court below in favor of the claimant and in direct conflict with the findings of fact of the board, must be reversed because in so doing the judges of the common pleas not only ignored the applicable principles of law but also, in effect, usurped the functions and powers exclusively vested in the compensation authorities by undertaking to pass upon the credibility of witnesses, weigh the evidence, and substitute their own findings of fact for those of the board.

About 9:30 o'clock in the forenoon of January 6, 1939, the body of claimant's husband, Fred Wellinger, 61 years of age and employed by the Borough of Brackenridge, during certain hours of each day, as the filter operator at its water supply reservoir, was found in the reservoir by persons searching for him. An autopsy established that his death was caused by "asphyxiation due to drowning."

Claimant, contending that her husband had accidentally "slipped" into the water "while working about the reservoir" and that his death was therefore compensable under Sec. 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended June 4, 1937, P. L. 1552, 77 PS §§411, 431, filed her claim-petition on January 31, 1939.

The defense interposed by the municipality and its insurance carrier was that Wellinger had committed suicide; it was based upon the concluding paragraph of that section, reading: "...... no compensation shall be paid when the injury or death is intentionally self inflicted, but the burden of proof of such fact shall be upon the employer." This provision relative to the burden of proof is merely a recognition and declaration of the legal "presumption" against suicide. (See *Wat-*

kins v. *Prudential Insurance Co.*, 315 Pa. 497, 505, 173 A. 644.)

Upon the issue of fact—suicide or accident—thus squarely raised by the pleadings the ultimate finding of the board (by expressly adopting the language of the referee) reads: (204a)

"Twenty-first: From all of the testimony, together with the coroner's report, and inferences drawn by your referee from the testimony and surrounding circumstances your referee finds as a fact that the decedent, Fred Wellinger, died between 9:00 P.M., January 5, 1939, and 7:00 A.M., January 6, 1939, by voluntarily taking his own life by jumping into the Brackenridge Borough City Reservoir, as a result of which he died of asphyxiation due to drowning."

When the record contains *any* substantial competent evidence supporting a finding of this kind, the only possible ground upon which it could be set aside by any court was clearly stated by our Supreme Court in *Ford v. Dick Co.*, 288 Pa. 140, 135 A. 903. That was a case in which the compensation authorities made an award upon their finding that the employee's death was *accidental*. The common pleas, upon the employer's appeal, said, "We think the testimony clearly shows decedent cut his own throat ...... [and] proves that the injury was intentionally self-inflicted." There, as here, there was no eye witness to the occurrence and the case had to be decided one way or the other by a consideration of the circumstantial evidence appearing upon the record. In reversing this substitution by the common pleas of its own finding for that of the board and reinstating the award, the Supreme Court held that the finding of the board in any case then in hand, whether of accident or suicide, is so conclusive that it cannot be reversed by either court unless the evidence against the finding is of the quality and quantity thus defined at page 146 of the opinion:

"Whether the presumption [against suicide] is rebutted is for [the triers of the facts] unless the evidence to the contrary is clear, positive, credible and either uncontradicted or so indisputable in weight and amount as to justify the court in holding that a verdict against it must be set aside as a matter of law."

In the Ford case the board found that the employer had not successfully rebutted the presumption against suicide, i. e. shown by a preponderance of the evidence that the death was intentionally self-inflicted; but in the case at bar the board, as the ultimate fact-finders and exclusively authorized to weigh the evidence and draw legitimate inferences therefrom, concluded, under all the evidence, that the employer had successfully carried the burden of proof resting upon it. That finding must stand unless the evidence supporting the claimant's theory of *accident* is "so clear, positive, credible and either uncontradicted or so indisputable in weight and amount" that if the issue had been tried before a jury a verdict of *suicide* would have to be set aside, as a matter of law.

The comparatively recent case of *Brecker v. P. & R. Coal & Iron Co.,* 138 Pa. Superior Ct. 421, 10 A. 2d 827, is an illustration of a case in which the testimony required the setting aside of a finding by the board. There, the issue was accident or suicide; the compensation authorities found accident. The common pleas upon reviewing the testimony held, as a matter of law, that the facts and circumstances there presented did not "permit of an inference of accidental death ...... the inevitable conclusion is that Brecker committed suicide ...... no other consistent conclusion could be arrived at," and entered judgment for the employer. A majority of the members of this court affirmed that judgment.

On the other side of the line, we have affirmed, under the same principle, judgments based upon findings by

the board of accident, where the defense was suicide, in the following cases: *Tuttle v. Holland Furnace Co.*, 111 Pa. Superior Ct. 290, 169 A. 462; *Franks v. Point Marion Bridge Co.*, 128 Pa. Superior Ct. 269, 193 A. 421; *Podgur v. Otto Eisenlohr and Bros. Inc. et al.*, 135 Pa. Superior Ct. 469, 5 A. 2d 603; and *Hunter v. American Oil Co. et al.*, 136 Pa. Superior Ct. 563, 7 A. 2d 479.

That the principle announced in *Ford v. Dick Co.*, supra, and applied by us in the cases above cited, was disregarded by the court below in the present case is apparent from the record.

When the claimant first appealed, on October 31, 1940, to the common pleas from the disallowance of her claim, for the reasons fully set forth in the opinion written for the board by Commissioner Jacoby, the record was returned to the board in an opinion and order by GARDNER, J. In the closing paragraphs of the opinion it is said, "It apears to us that the referee and the board were not justified in finding that the deceased came to his death by suicide."

The dissatisfaction of the court with the finding of the board seems to have been largely based upon its review of the nature and comparative strength of the testimony indicative of suicide in the Ford, Tuttle, Franks and Podgur cases, above cited. The opinion, however, entirely overlooks the important facts that in each of those cases the finding of the board was death by *accident*, which finding no court undertook to disturb except in the Ford case and that court was reversed for so doing. The concluding paragraph of the opinion reads: "The case will be referred back to the Workmen's Compensation Board to make a finding in accord with the law in such cases, keeping in mind that there is a presumption against suicide or self-destruction on the part of a sane person who came to his death under circumstances not explained."

The board throughout its opinion had fully appreciated the burden of proof resting upon the defendants, but concluded its discussion of the facts developed by the testimony with the statement: "All the circumstances, and inferences fairly and reasonably deducible therefrom, compel us to reject the claim." Although the language of the opinion—"make a finding in accord with the law in such cases"—was not particularly specific, the order remitting the record left little doubt of the purpose for which it was returned; its language was: "And now, to wit, January 17, 1941, this case is remanded to the Workmen's Compensation Board to find facts in accord with the foregoing opinion. By the Court."

The board properly interpreted the order as a direction "to find in favor of the claimant."

It is needless to say that under our repeated rulings no court has any authority to make such an order and the board was fully justified in declining, as it did, to surrender its functions and responsibilities to the common pleas.

The board, however, upon the return of the record reopened the case to afford both sides an opportunity to present such additional evidence as either might desire. Claimant, her son, and other witnesses called by her were heard. At a later hearing several witnesses called by the defendants testified. Upon consideration of the entire record the referee republished his original findings and entered an order again disallowing the claim. The board, upon claimant's appeal, reviewed the additional evidence and reaffirmed its "conclusion that the death of Wellinger was a voluntary premeditated act on his part, entirely disassociated with his employment."

When the claimant again appealed to the common pleas, on November 14, 1941, an opinion was filed by MUSMANNO, J. in which he reviewed, weighed and

analyzed the evidence. Notwithstanding the clear statement of the Supreme Court in *Ford v. Dick Co.,* supra, that the question whether an employer has successfully rebutted the presumption against suicide is for the board and that its determination that he has is final unless there is no evidence to sustain it or the evidence of accidental death is so indisputable in weight and amount as to render the latter conclusion practically inevitable, the writer of the opinion thus stated his understanding of the scope of his review:

"Thus, *our* duty here is to determine whether the defendants have met the burden of proof placed upon them. Do the defendants establish by the *fair weight* of the evidence that Frederick Wellinger came to his death by suicide? In order to arrive at the conclusion of suicide, *we* must find that it is not logical or just to conclude that the death was an accidental one." (Italics supplied.)

Clearly, that is just what the appellate courts have repeatedly held the common pleas court cannot properly do in a workmen's compensation case. It is not suggested by the court below that the board's finding of suicide lacks support in the evidence, or that the evidence indicating an accidental death measures up to the standards prescribed in the Ford case. After stating that the theory of suicide is not "entirely untenable," the opinion continues: "It appears to *us* that the *probabilities* far more easily harmonize with the accident theory than they do with the suicide theory and *we* definitely assert as a matter of law that the defendants have failed to carry the burden of proof imposed upon them by the Workmen's Compensation Act." (Italics supplied.)

This seems to be nothing more than a substitution by the court of its own findings, based upon its opinion of the weight of the evidence, for those of the board relating to matters exclusively within the province of the latter.

The determination of the court below to compel the defendants to accept its findings of fact in lieu of the findings of the compensation authorities was thus expressed in the closing paragraphs of its opinion: "In view of the fact that the compensation authorities seem disinclined in this case to follow the reasoning of the court of common pleas, we see no reason for once more sending it back to them for findings or for the taking of any further testimony; nor do we see the necessity of ordering them to enter an order in favor of the claimant for that would be a mere administrative act based upon our order, and not on any volition of their own. Thus, in the interest of time and convenience to all concerned the judgment will be entered here in favor of the claimant."

Accordingly, the court below, under date of January 21, 1942, entered a formal judgment in favor of the claimant and against the defendant municipality and its insurance carrier for the compensation to which claimant would have been entitled if her husband's death had resulted from an accident in the course of his employment. We are unaware of any authority in the statute for such procedure. It was never intended by the legislature that the board could be coerced into adopting the "reasoning" of any court upon *matters of fact,* or that an employer may be deprived of his property by the method here adopted.

The scope of the review by the common pleas in a case of this kind was thus specifically defined by the Supreme Court in *Ford v. Dick Co.,* supra: "The court below had the right and duty to apply the standard [of proof] hereinbefore stated, and thus to pass on questions of law connected with the burden of proof, also to determine whether there was any evidence upon the record to support the findings of fact in [defendants'] favor, ...... but it lacked power to go further and substitute its own findings according to what it conceived to be the weight of the evidence."

The testimony in this case is voluminous, covering more than one hundred and fifty pages, and we deem it unnecessary to review it in detail. In lieu of its recital, we append hereto as a footnote extracts from the underlying findings of fact of the referee, adopted by the board, each of which is fully supported by the evidence. All that need be said of the testimony, when viewed as a whole, is that if the compensation authorities had made a finding of accidental death, neither the court below nor this court would have had power, under the statute, to disturb it. But it is also clear that it cannot be said as a matter of law that the evidence relied upon by the claimant to support her theory of accidental death is so "clear, positive, credible and uncontradicted," or so "indisputable in weight" as to justify either court in setting aside the finding by the board of suicide.

The assignment of error to the action of the court below in making, and entering judgment upon, an award of compensation to the claimant-appellee is sustained.

Judgment reversed and here entered for appellants.

---

Footnote.

"The decedent on Thursday, January 5, 1939, [as on other days] came to work at the City Water Reservoir at 7:00 A.M. and worked until 12:00 noon, at which time he was relieved by Albert D. Beckwith who worked at the same job from 12:00 noon until 4:00 or 5:00 P.M.

"Among the duties of the position as filter plant operator are the following: 1. At between 8:00 A.M., and 8:15 A.M. the operator reads the measurements of the height of the water in the reservoir by looking across the reservoir from the filter plant house, a distance of 170 to 180 feet where there are large figures cut in the concrete slope, which figures measure 15 or 18 inches in height and are painted white. It is then the duty of the operator to call up the operator of the pumping station and tell him to start the pumps and also tell him how long to keep the pumps running pumping water into the reservoir. 2. Another duty of the filter plant operator is to take a sample of the water

at approximately 10.00 A.M. every morning, and have it tested to determine the amount of chemicals to be put into the water. This is done by the filter plant operator taking a common quart milk bottle to which is attached about one foot of heavy wire, making a handle for the bottle, and going inside the gate of the reservoir, at a point where there is a flume pipe to which is attached a chain from the fence, to be used as a guard chain, to which the operator may hold when he goes down the inclined bank of the reservoir, and that the operator at this point takes a sample of the water in the milk bottle and takes it back to the filter house for the purpose of determining the chemical content of the water.

"Your referee finds as a fact that on Thursday, January 5, 1939, the deceased was last seen at home by his wife, the claimant herein, at about 1:30 P.M., when the claimant herein left the home and went to the library and to town to shop.

"Further, your referee finds that the decedent thereafter went down town to a restaurant operated by John H. Pappas where he had at least a beer and a whiskey and started to cry and talked for a considerable period of time with the said John H. Pappas concerning his troubles; and that during said conversation the deceased told John Pappas that he had 'too much trouble,' and further stated, 'Sometimes I am going to end my troubles.'

"That the deceased was seen by Mrs. Hazel McCurdy a short distance from the reservoir [where he had no duties to perform at that time] at approximately 9:00 P.M. on January 5, 1939, at which time the deceased spoke to Mrs. McCurdy; this was the last time that the decedent was seen alive.

"That the decedent did not return to his home on the evening of January 5, 1939, ...... The pump operator, Miller Beckwith, didn't receive the usual call from the decedent at 8:15 in the morning, [July 6th] and sent Mr. Brice Bonner, an electrician, up to the reservoir to see why Fred Wellinger hadn't called the pumper.

"The gate leading from the filter house through the fence to the reservoir was open when the search began for the body of the decedent, and the lock was lying on the ground three or four feet away from the gate with the key in the lock. The milk bottle used for testing was in the pump house or filter house, and was not inside the fence surrounding the reservoir. The reservoir was drained two days later and no debris was found inside the fence or in the reservoir, nor was any broken bottle or bottle which might have been used for the purpose of taking a test, found within the fence or in the reservoir.

"The body of the decedent was rigid and stiff when it was taken from the water and the arms were bent upward above the head, and the joints were stiff ...... No one saw the decedent enter the filter house or the gate of the reservoir, or saw the decedent drown."